570 F.2d 1080
 AMERICAN BROADCASTING COMPANIES, INC., Robert L. Crivelli,
Apula Borger, Vernon M. Kerrick, Philip M.
Godfrey, Charles N. Mertz and Jonathan
J. Olken, Plaintiffs-Appellants,
v.
Mario M. CUOMO, Edward I. Koch, and Michael J. Codd,
Individually and as Police Commissioner of the
City of New York, Defendants-Respondents.
 No. 77-7476.
 United States Court of Appeals,
Second Circuit.
 Sept. 21, 1977.
 
 Philip Forlenza, W. Cullen MacDonald, Hawkins, Delafield & Wood, New York City (ABC et al.), for plaintiffs-appellants.
 Leonard Koerner, Corp. Counsel, New York City, for Codd.
 Fabian G. Palomino, Corner, Finn, Dwyer & Charles, Brooklyn, N.Y., for Cuomo.
 Edward N. Costikyan, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Koch.
 Before GURFEIN and VAN GRAAFEILAND, Circuit Judges, and COFFRIN, District Judge.
 Statement made by the court at the disposition of the appeal in open court.
 GURFEIN, Circuit Judge.
 
 
 1
 In view of the shortness of time, we will deliver an oral opinion subject to editing and corrections that may occur to us when we read the text. In the meantime, the opinion is being taken down on tape and will be available to counsel.
 
 
 2
 This is an appeal from an order of Judge Kevin Duffy dismissing the complaint and refusing to sign a temporary restraining order. The individual appellants are employees of the corporate appellant, AMERICAN BROADCASTING COMPANIES, INC. ("ABC"), and are part of its Eyewitness News Department. Respondents, the Honorable Mario Cuomo and the Honorable Edward Koch are the two remaining candidates in the primary runoff for Mayor of New York and the respondent Codd is the Police Commissioner of the City of New York.
 
 
 3
 This case arises out of a series of arrests and threats of arrests against persons affiliated with the individual appellants, with such threats actually being directed against some of the individual appellants by Messrs. Koch and Cuomo and the City Police Department (on September 8, the first day of the Democratic primary) who claimed trespass in violation of the criminal trespass law of New York, N.Y. Penal Law § 140.05 (McKinney 1975).
 
 
 4
 These threatened arrests occurred in various campaign facilities of the candidates in the primary. The matter has been aggravated by the circumstance that there is an ongoing collective bargaining dispute between the network, ABC, and the National Association of Broadcast Engineers and Technicians, known as "NABET", whose members have been on strike for some time. On September 8, apparently some of the NABET members picketed several of the headquarters of the Democratic candidates and engaged in other secondary activity for the purpose of causing the ABC management television crew, who were then inside the several campaign facilities by invitation of the candidates, to be ousted. ABC, we are told, has filed a complaint with the National Labor Relations Board charging unlawful secondary activity on the part of the union, but we are not concerned with that subject.
 
 
 5
 We do know that there have been threats that if the management crews of ABC try to enter or fail to leave the various premises of the candidates, they would be arrested.
 
 
 6
 Mr. Koch has indicated a belief, which Mr. Costikyan has indicated here again today, that if ABC is permitted to bring its management crew into the headquarters, the crews of CBS and NBC would leave and the networks would refuse to put in their own management crews. It is possible, of course, for ABC to send in movie crews who are not members of the NABET union but as they have pointed out in their affidavit, this would prevent a simultaneous broadcast of the activities which they film, since it would take several hours to process the movie film.
 
 
 7
 The question before us is whether Judge Duffy abused his discretion in refusing to restrain the Police Commissioner from enforcing the criminal trespass statute and from refusing to restrain Messrs. Koch and Cuomo from refusing access to the ABC management crew.
 
 
 8
 The first question presented as it has been given to us is whether a federal court should enjoin enforcement of a criminal statute which as applied interferes with First Amendment rights.
 
 
 9
 The Supreme Court held in Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1973), that a declaratory judgment was proper when a criminal prosecution for exercising a First Amendment right was threatened and the Court went further in Doran v. Salem Inn., Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), by extending the declaratory judgment relief to injunctive relief. There is no question that irreparable harm will result if ABC is not permitted to broadcast live coverage of the post-election activities at the respective headquarters. We think that this would amount to irreparable injury, not only to ABC but to the public which views the events on its channel. Some of these viewers might be limited to a single channel, such as people in hospitals or other institutions who have a single channel to watch, and indeed the public generally would hardly know that they are being foreclosed, if they watch ABC, from seeing something that they could see if they switched to another station. And so we cover the first element required for a permanent injunction, namely, irreparable injury.
 
 
 10
 The second element would be whether there is likely chance of success upon a trial of a permanent injunction. This, in turn, requires the consideration of two questions. First, whether a First Amendment right is being violated; and secondly, whether there is sufficient state action to constitute a violation of the Civil Rights Act of 1871 and the Fourteenth Amendment as it applies the First Amendment to the states.
 
 
 11
 With respect to the constitutional free speech issue, the Police Commissioner takes the position that he is simply enforcing the statute. As far as the candidates are concerned, we have indicated the position of Mr. Koch and apparently, judging from the statement of his representative, Mr. Cuomo takes the same position, namely, that there might be danger that CBS and NBC might withdraw.
 
 
 12
 The second phase of the claim dealing with the constitutional right is that the candidates apparently contend that their activities are private and that the premises upon which they propose to engage in these activities are also private premises where invitation is required in order to give anybody, including the press, a license to be on those premises. They point out that the invitation to attend the post-election festivities or obsequies, as the case may be, is by invitation only. But we do not think that this is the issue. We think that once the press is invited, including the media operating by means of instantaneous picture broadcast, there is a dedication of those premises to public communications use. It is idle to speak of privacy when the affair is publicly transmitted by broadcast to millions of viewers. The issue is not whether the public is or is not generally excluded, but whether the members of the broadcast media are generally excluded. If choice were allowed for discrimination in a public event of this magnitude in the various media, then we reject the contention that it is within the prerogative of a political candidate. We rather think that the danger would be that those of the media who are in opposition or who the candidate thinks are not treating him fairly would be excluded. And thus we think it is the public which would lose.
 
 
 13
 In short, we do not think that the particular place involved is necessarily the outer limit of the constitutional protection of the First Amendment. We think that once there is a public function, public comment, and participation by some of the media, the First Amendment requires equal access to all of the media or the rights of the First Amendment would no longer be tenable.
 
 
 14
 We thus conclude that the First Amendment rights of ABC and of its viewing public would be impaired by their exclusion from the campaign activities and that this exclusion under the threat of arrest is unconstitutional and should be the subject of a federal injunction.
 
 
 15
 The next issue, as I have indicated, that is raised is the question of state action. Mr. Cuomo raises the point quite well that although Commissioner Codd, as a Police Commissioner is an agent of the State, the individual candidates, who have not yet been elected, are not. We need not determine that fully. The Supreme Court has indicated that primary elections are so fundamental a part of our governmental elective process as to be on a par with general elections. That these gentlemen, Messrs. Koch and Cuomo are public figures, we cannot doubt. We think that in this case the statement on behalf of the Police Commissioner is both relevant and important. The Police Commissioner, in stating that his duty was to enforce the law, as indeed it is, indicated that in cases of arrests for criminal trespass, his men require two things: (1) that there be a complaint from the owner of the premises and (2) that the owner give some assurance that he will follow up the arrest by becoming a complainant in a court action. This indicates to us that in practice, arrests for criminal trespass result from a combination of activity on the part of the Commissioner and his agents and of the complaining owners of the premises. In this circuit, we have held in Birnbaum v. Trussell, 371 F.2d 672 (1966), that an ordinary citizen who conspires with a state agent to violate the civil rights of a plaintiff is equally liable and that this amounts to a conspiracy based upon state action, and we adhere to that precedent.
 
 
 16
 We are not unconscious of the fact, of course, that the union involved has a great stake in the economic war which it is waging against the network. And we recognize that its own rights of free speech and picketing should not be curtailed, even where there is a paramount necessity to protect First Amendment rights and where the pressure on the part of the union is, as in this case, only secondary.
 
 
 17
 We therefore conclude with some reluctance because of the situation I have just mentioned that the two candidates and their officers and agents, as well as the Police Commissioner should be restrained in order to effect the protection of the Fourteenth Amendment rights of ABC and its viewing public. We think that although there has already been one arrest at one of the headquarters at the instigation of one of the employees of one of the candidates and that this criminal case is pending, nevertheless, despite the constraints being put on federal courts by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and other related cases, the impact of those cases is excepted when the remedy at law is inadequate and the harm is "great and immediate."
 
 
 18
 Since we are dealing here with something that is going to happen on Monday, there is no conceivable possibility that the state courts in the criminal prosecution can determine the matter by that date.
 
 
 19
 Accordingly, we reverse the order of the district court, and we order a restraining order to be issued preventing the arrest of the ABC crew, but we are limiting it to the condition that CBS and NBC participate simultaneously in the broadcasts in question. In the event that CBS and NBC refuse to either cross the picket line or have their managerial crew operate, then the injunction will not be operative because that would result only in ABC getting what we might call in the vernacular a "scoop" which is not our intention. In other words, we want the networks to be on a par and if they are on a par, then Mr. Koch's suggestion that the public will be defeated in its right of viewing becomes chimerical.
 
 
 20
 If counsel will proceed to the Clerk's Office, he will find that we have scribbled out an order based on the opinion which we have just delivered, and you might then proceed to Judge Duffy's court, which I think is Part I this week, and make such further arrangements as may be necessary, to process the papers.
 
 
 21
 I want to thank counsel both for the speed with which they met this problem and for the skill with which they presented the issues. It was very helpful to the court on both sides, and I compliment you all.
 
 
 22
 (Later in the day, the Court added to its oral opinion: "The judgment dismissing the complaint is reversed.")