Jerry Edmon **FORDYCE**, Plaintiff,

v.

**CITY OF SEATTLE**, et al., Defendants.

No. C92–75WD.

United States District Court, W.D. Washington, at Seattle.

July 29, 1993.

James E. Lobsenz, Carney, Stephenson, Badley, Smith & Spellman, Seattle, WA, for plaintiff.

Anne Melani Bremner, Stafford, Frey, Cooper & Stewart, Seattle, WA, for defendants City of Seattle, M.S. Donnelly, Jane Doe Donnelly, C. Villagracia, Jane Doe Villagracia, J.B. Craig, Jane Doe Craig, S. Knechtel, Jane Doe Knechtel, Sgt. Martin, Jane Doe Martin and John Does, 1 through 25.

Marshall J. Nelson, Davis Wright Tremaine, Seattle, WA, for amici curiae Allied Daily Newspapers of Washington, Washington State Ass'n of Broadcasters and Washington Newspapers Publishers Ass'n.

Michael E. Kipling, Graham & Dunn, Seattle, WA, for amicus curiae American Civil Liberties Union of Washington (ACLU).

James Kendrick Pharris, Attorney General's Office, Olympia, WA, for amicus curiae State of WA.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

DWYER, District Judge.

### I. INTRODUCTION

Plaintiff Jerry Edmon Fordyce has sued the City of Seattle and eight of its police officers over events that took place on August 5, 1990. On that date plaintiff spent several hours videotaping a public demonstration in downtown Seattle. He alleges that the police subjected him to "repeated acts of harassment, intimidation, abuse, assault and battery." The defendants deny this. At the end of the day plaintiff was arrested for allegedly recording a private conversation in violation of a state statute. He was booked, spent several hours in jail, and was released early the next morning. Plaintiff asserts claims under 42 U.S.C. § 1983 for alleged deprivations of his rights under the First, Fourth, and Fourteenth Amendments, and pendent state claims of false arrest, false imprisonment, and assault and battery. He seeks damages and an injunction. *See* Amended Complaint, Dkt. # 26. The defendants deny any violations of law in their dealings with plaintiff, and the officer defendants assert the defense of qualified immunity under both federal and state law. *See* Answer, Dkt. # 9.

Defendants now move for summary judgment dismissing all claims. Plaintiff moves for partial summary judgment as to liability against four of the officers and for an injunction against the city. Oral argument on the

motions was heard on June 7, 1993. After the hearing the court invited and received three briefs filed in behalf of the Attorney General of the State of Washington, Allied Daily Newspapers of Washington, the Washington Association of Broadcasters, the Washington Newspaper Publishers Association, and the American Civil Liberties Union of Washington, as friends of the court. The parties have replied to the *amicus curiae* briefs, and plaintiff has been allowed to supplement the record with additional deposition excerpts. All materials filed and arguments made have been fully considered.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment under Fed.R.Civ.P. 56 may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. An issue of material fact is one that affects the outcome of the case and requires a trial to resolve differing versions of the truth. *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). In deciding the motion the court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). However, the non-moving party must respond to an adequately supported motion by showing that a genuine issue of material fact exists; if the response falls short of that, summary judgment should be granted. Fed. R.Civ.P. 56(e); *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31.

## III. SUMMARY OF UNDISPUTED FACTS

In the present case there are no genuine issues of material fact for trial, and the matter can be fully decided on the motions for summary judgment.

There is an unusually vivid piece of evidence in the record. It is a videotape made by plaintiff himself that shows much of what happened on August 5, 1990. The tape is an exhibit to plaintiff's affidavit and also appears as Exhibit 4 to the affidavit of Ted Buck. Anyone reviewing this record should watch the videotape, which depicts most of the events in question.

The videotape and the other evidence of record show the following facts without dispute:

The demonstration of August 5, 1990, was organized by the "Shut Down the Clamp Down" coalition, of which plaintiff was a member. Plaintiff volunteered to videotape the demonstration for "local television production." The demonstration coincided with the closing ceremony of the Goodwill Games and protested a Seattle city ordinance known as the "drug loitering law." Plaintiff has explained that his own interest centered on "the intrusion of Pentagon security into Seattle during the Goodwill Games," which "some of us feared would degenerated [*sic*] into maintained detention centers" at which "dissident U.S. citizens such as ourselves" would be confined. Fordyce Deposition at 16–17.

The demonstration group paraded around downtown Seattle in the afternoon and evening, chanting or shouting such messages as "Fuck the police!" "Fight the power!" "Pigs aren't kosher!" and "Police, you can't hide, we charge you with genocide!" There were repeated attempts to provoke the police. At one point, demonstrators threw a pig's head wrapped in an American flag at several officers. Flags were burned. Strident speeches calling for revolutionary action were made through bull-horns.

Plaintiff's videotaping continued for several hours. Some of the taping was of demonstrators making speeches or being interviewed, and some was of police officers in the street on foot or on horseback. The Seattle police generally reacted to the demonstrators, and to the plaintiff, in a calm and professional manner. At one point an officer being filmed stepped toward the plaintiff and roared at him in what was obviously a joking way. At other points plaintiff's camera appears to have been jostled as he waded through groups of officers or pedestrians. During these events plaintiff repeatedly said

on the soundtrack that he had been "assaulted."

Near the end of the day plaintiff got into an altercation with a pedestrian, Judy Worley, and her two nephews, ages twelve and thirteen. Ms. Worley and her nephews were on the sidewalk or street; whether they were watching the demonstration, or downtown for other purposes, is not clear. Plaintiff videotaped them from close range. Mrs. Worley asked him to stop. When he did not, Ms. Worley approached him angrily, apparently to hit him or his camera. A voice, apparently that of an officer, called out, "Hey, hey, hey. Take it easy over there." Ms. Worley complained to the officers that plaintiff was videotaping her nephews and would not stop. Further words were exchanged, during which an officer told plaintiff that a state statute made it a misdemeanor to record a private conversation without consent; plaintiff contended he had been assaulted by one of the young boys; and plaintiff said he was in a public place and continued taping.

At this point plaintiff was arrested, booked, and jailed. The police report states:

> On 8–5–90 at about 2300 hours. Officer C. Villagracia received a complaint from victim Worley that Mr. Fordyce was vidiorecording [sic] her nephews, Michael 13 & Dominic Simpson 12. Mr. Fordyce was advised that it was permissable [sic] to photograph anyone, but that it was a criminal offense to record a private conversation. He ignored the warning an continued to record our conversation with the VHS camera/recorder. He was placed under arrest.

Affidavit of J. Lobsenz, Knechtel Deposition Excerpts, Exh. 1.

Plaintiff was released early the next morning. On October 1, 1990, the case against him was dismissed on the prosecutor's motion.

## IV. CLAIMS BASED ON EVENTS PRIOR TO ARREST

■ Plaintiff's claims based on events prior to his arrest are easily resolved. These claims have not been abandoned, but were not mentioned by counsel in oral argument on the summary judgment motions. The undisputed facts show that plaintiff continued videotaping for hours in the presence of Seattle police officers, often taping the officers themselves. There was no interruption of or interference with his activity. He had full access to the public events of August 5, 1990, equal to that afforded to all media. There is no evidence that would permit a rational jury to find that he was assaulted. When the record is viewed in the light most favorable to plaintiff, it contains nothing that could support a verdict in his favor on a section 1983 claim, or on any pendent state claim, in regard to the events preceding the arrest. Further, as to those events, the officer defendants are immune from suit under both federal and state law, on the bases described below. Summary judgment for defendants must be entered on all claims based on events preceding the arrest.

## V. QUALIFIED IMMUNITY AS TO SECTION 1983 CLAIMS

Sections V, VI, and VII of this order deal with the motions for summary judgment dismissing the claims based on the arrest.

■ The officer defendants contend, first, that the rule of qualified immunity shields them from plaintiff's claims brought under 42 U.S.C. § 1983.

■ Qualified immunity is "an immunity from suit rather than a mere defense to liability" and "ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, —— U.S. ——, —————, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991). An officer is immune from suit under section 1983 "if a reasonable officer could have believed [his conduct] to be lawful." *Id.* —— U.S. at ——, 112 S.Ct. at 536. An arresting officer is not required to have been right in hindsight:

> [L]aw enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity.

*Id.* —— U.S. at ——, 112 S.Ct. at 536, citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ The law as it stood at the time of the arrest must be considered; an officer cannot

be penalized for failing to predict legal developments that came later. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Court held:

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

The Ninth Circuit has recently held:

When a law enforcement officer asserts qualified immunity from liability for Fourth Amendment violations, the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful....

\*　　\*　　\*　　\*　　\*　　\*

We interpret *Hunter* to hold that the question of whether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is "an essentially legal question," that should be determined by the district court at the earliest possible point in the litigation. Where the underlying facts are undisputed, a district court must determine the issue on motion for summary judgment.

*Act Up!/Portland v. Bagley*, 988 F.2d 868, 871–73 (9th Cir.1993) (citations omitted).

The record here shows without dispute that the officers arrested the plaintiff for allegedly committing a gross misdemeanor in violation of a state statute, RCW 9.73.030. That statute provides in relevant part:

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

\*　　\*　　\*　　\*　　\*　　\*

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

One who violates RCW 9.73.030 is guilty of a gross misdemeanor. RCW 9.73.080.

The question is whether a reasonable officer could have believed on August 5, 1990, that it was lawful to arrest plaintiff for allegedly having recorded a private conversation in violation of RCW 9.73.030.

■ In Washington a peace officer may arrest without a warrant when a misdemeanor is committed in his presence. RCW 10.-31.100. In determining whether probable cause exists for a warrantless misdemeanor arrest the officer may consider what he hears from participants, and infers from the known circumstances, as well as what he personally sees the arrested person do. *Tacoma v. Harris*, 73 Wash.2d 123, 126–27, 436 P.2d 770 (1968); *Sennett v. Zimmerman*, 50 Wash.2d 649, 651, 314 P.2d 414 (1957). The Washington Supreme Court has held:

Police officers should not be required to guarantee the correctness of their determination that an offense is, in fact, being committed, in order to justify making an arrest without a warrant. An officer is often called upon to make a prompt decision, based upon his visual interpretation of the conduct of others which he witnesses. If the circumstances are such as would cause a reasonable person to believe that a crime is being committed in his presence, then the officer can be said to have probable cause and is immune from liability for acting in good faith upon that belief. To require police officers to be insurers of the correctness of their judgment would hamper them in the performance of their duties. Under such circumstances, they would be most reluctant to make any arrests for fear that they would be held liable for having made an honest and reasonable mistake.

*Sennett*, 50 Wash.2d at 651, 314 P.2d 414.

It is undisputed here that plaintiff was audio-recording as well as filming persons on

the sidewalk and street; that Ms. Worley complained to the police that plaintiff was videotaping her and her nephews and would not stop; that plaintiff continued videotaping after both she and the officers asked him to stop; and that he was then arrested on the basis that the conversations between Ms. Worley and her nephews, and among the officers themselves, were private conversations which plaintiff had continued to record after consent was expressly denied, in violation of the statute.

On this record the officers are immune from suit because a reasonable officer could have believed the arrest to be lawful. Whether and in what circumstances a conversation in a public street can be deemed "private" within the meaning of RCW 9.73.-030 had not been settled at the time by the Washington courts. The critical point for qualified immunity is that the arresting officers *reasonably could have believed* that, if the participants so intended, a conversation on the sidewalk or street would be "private" within the meaning of the statute, and that plaintiff had committed a misdemeanor by recording such conversations without consent.

Prior to this arrest, the Washington Court of Appeals had held that in determining whether a conversation is private "the court must consider the intent or reasonable expectations of the participants as manifested by the facts and circumstances of each case." *State v. Forrester,* 21 Wash.App. 855, 861, 587 P.2d 179 (1978). The case of *Mark v. Seattle Times,* 96 Wash.2d 473, 497–99, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2942, 73 L.Ed.2d 1339 (1982), would have told the officers that anyone has the right to photograph people who appear in public, but that case dealt only with visual recording, not with sound recording.

Nothing in the reported Washington court decisions as of 1990 would have clearly told the officers that there could be no private conversation in the street between private citizens such as Ms. Worley and her nephews, or even among the officers themselves. The officers stated their understanding in the arrest report:

Mr. Fordyce was advised that it was permissable [sic] to photograph anyone, but that it was a criminal offense to record a private conversation.

Affidavit of J. Lobsenz, *supra.*

In view of the statutory and decisional law of Washington as it existed in August 1990, the complaint made by Ms. Worley at the scene, and the events witnessed by the police, a reasonable officer in the position of the defendants could have believed that the plaintiff had violated RCW 9.73.030 by videotaping conversations of Ms. Worley and her nephews, and of the officers themselves, without consent.

Plaintiff cites the absence of a Worley-nephews conversation on the tape placed in evidence, and the later dismissal of the charge, but neither of these factors changes the outcome. The decisive point is that a reasonable officer could have believed it was lawful to arrest and charge plaintiff on August 5, 1990. That being so, the officer defendants are entitled to qualified immunity and to summary judgment dismissing the section 1983 claims against them.

## VI. OFFICERS' IMMUNITY AS TO STATE CLAIMS

Under Washington law a police officer is immune from tort claims for false arrest or false imprisonment if he was carrying out a statutory duty, acted according to procedures dictated by statute or by his superiors, and acted reasonably. *Guffey v. State,* 103 Wash.2d 144, 152, 690 P.2d 1163 (1984). Where an officer relies on a presumptively valid statute he cannot be held liable for an arrest based upon that statute. *Id.* An officer "who makes an arrest without a warrant is immune from liability if he has reasonable cause to believe that a crime is being committed in his presence and acts in good faith on that belief." *Guffey* at 150, 690 P.2d 1163. Liability cannot be imposed simply on the basis that the officer's decision, viewed in hindsight, was incorrect. *Sennett,* 50 Wash.2d at 651, 314 P.2d 414. The officers here were carrying out their statutory duties under standard procedures. Their arrest of plaintiff on the basis that he had committed a misdemeanor in their presence

was reasonable, as set forth above. There is no evidence that could support a finding that the officers arrested plaintiff for any other reason; speculation in that regard cannot defeat summary judgment. *See* Fed.R.Civ.P. 56(e). Accordingly, the state claims against the officer defendants must be dismissed on the basis of qualified immunity.

## VII. CLAIMS AGAINST CITY OF SEATTLE

■■■■ A section 1983 claim for damages may be maintained against a municipality only where the municipality itself causes the constitutional violation; there is no *respondeat superior* or vicarious liability. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989). A city's failure to train officers may lead to liability if it reflects deliberate indifference to the rights of persons with whom the police come into contact. *Id.* at 388, 109 S.Ct. at 1204. Proof of a municipal policy of violating constitutional rights, or of a decision made by a governmentally authorized decisionmaker, may support liability if it was the "moving force" behind the violation. *Id.* at 388–89, 109 S.Ct. at 1204–1205; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986); *Larez v. City of Los Angeles*, 946 F.2d 630, 645–46 (9th Cir. 1991). Here there is no evidence that any failure to train occurred or that any policy of the City of Seattle caused a deprivation of plaintiff's constitutional rights. The city is entitled to summary judgment of dismissal as to the section 1983 claims.

As to the common law claims for damages, since the officer defendants are entitled to dismissal, there is no basis for holding their employer liable, and summary judgment must be entered as to those claims as well.

## VIII. INJUNCTIVE AND DECLARATORY RELIEF

In his complaint plaintiff seeks "a permanent injunction restraining defendants from interfering with rights of citizens videotaping public events and police activity associated therewith." Amended Complaint, Dkt. #26, at 7. He now asks that summary judgment be entered enjoining the city from applying RCW 9.73.030 to arrest or prosecute persons who record communications in public places with readily apparent video or recording devices. Defendants seek summary judgment dismissing plaintiff's injunction claims and any related claims.

■■ There is no doubt that plaintiff's First Amendment rights as an unconventional news-gatherer are equal to those of an employee of a mainstream television station. As the Supreme Court held in *Branzburg v. Hayes*, 408 U.S. 665, 704, 92 S.Ct. 2646, 2668, 33 L.Ed.2d 626 (1972), "liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who uses the latest photocomposition methods." As the Second Circuit noted in *American Broadcasting Companies, Inc. v. Cuomo*, 570 F.2d 1080, 1083 (2nd Cir.1977), "once there is a public function, public comment, and participation by some of the media, the First Amendment requires equal access to all of the media or the rights of the First Amendment will no longer be tenable." And as the recent Rodney King case illustrates, "news-gathering" these days is often done by private citizens who have no connection with any news medium, but whose contribution to the flow of public information is important.

■■ A sufficient case or controversy is presented, and plaintiff has standing to sue. Having been arrested once, plaintiff is entitled to cover future events with knowledge of whether or not he will be arrested again for videotaping conversations in a public street. As the Supreme Court stated in *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941):

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*See also Central Montana Elec. v. Adm'r of Bonneville Power*, 840 F.2d 1472, 1475 (9th Cir.1988).

In *Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir.1986), the court held that declaratory relief is appropriate:

"(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1470 (9th Cir.1984).

■ It does not matter that plaintiff has prayed only for an injunction, not for a declaratory judgment. Fed.R.Civ.P. 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." Rule 54(c) provides that

every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

Accordingly, "a party may be awarded declaratory relief, even though he has not demanded it." Wright, Miller & Kane, *Federal Practice & Procedure,* Civil 2d § 2664 (1983).

A declaratory judgment, rather than an injunction, is the proper remedy. In *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Court described declaratory relief as "an alternative to the strong medicine of the injunction," and stated:

We therefore hold that, regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied.

*Id.* at 466, 474–75, 94 S.Ct. at 1219, 1223–24.

■ The federal courts must exercise restraint when asked to issue injunctions against state officers engaged in law enforcement. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974); *Gonzales v. City of Peoria,* 722 F.2d 468, 481

(9th Cir.1983). A declaratory judgment is adequate here because there is no reason to believe the defendants will attempt in the future to apply RCW 9.73.030 in any way that conflicts with the present decision. *See Gonzales,* 722 F.2d at 481.

The scope of the judgment should be carefully limited to what the factual record requires. The Supreme Court has stated:

We call to mind two cardinal rules governing federal courts: " '[o]ne, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' "

*Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 501, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985) (citations omitted).

■ The courts of Washington, not the federal courts, have the authority to construe RCW 9.73.030. A federal court's duty, when faced with a constitutional challenge such as this one, is to determine the statute's "allowable meaning." In *Stoianoff v. State of Montana,* 695 F.2d 1214, 1218 (9th Cir.1983), the Ninth Circuit held:

It is, of course, solely within the province of the state courts to authoritatively construe state legislation. *See United States v. Thirty–Seven (37) Photographs,* 402 U.S. 363, 369 [91 S.Ct. 1400, 1404, 28 L.Ed.2d 822] (1971). "When as here those courts have not spelled out the meaning of the statute, this Court must extrapolate its allowable meaning . . . in a manner that affords the widest latitude to state legislative power consistent with the United States Constitution." *Garner v. Louisiana,* 368 U.S. 157, 174 [82 S.Ct. 248, 257, 7 L.Ed.2d 207] (1961) (Frankfurter, J., concurring). *See also High Ol' Times, Inc. v. Busbee,* 673 F.2d 1225, 1230 (11th Cir. 1982).

■ The law of Washington now is more fully developed than it was three years ago when the events in question took place. While the exact question has not been decided, it is highly probable that the state courts would interpret RCW 9.73.030 so as to *not* make criminal the recording of a conversa-

tion held in a public street, in voices audible to passersby, by the use of a readily apparent recording device. *See Kadoranian v. Bellingham Police Dept.*, 119 Wash.2d 178, 189–90, 829 P.2d 1061 (1992); *State v. Fjermestad*, 114 Wash.2d 828, 830–34, 791 P.2d 897 (1990); *State v. Flora*, 68 Wash.App. 802, 808, 845 P.2d 1355 (1992). *See also Mark v. Seattle Times*, 96 Wash.2d at 497–99, 635 P.2d 1081; *State v. Williams*, 94 Wash.2d 531, 543, 617 P.2d 1012 (1980); *State v. Slemmer*, 48 Wash.App. 48, 52, 738 P.2d 281 (1987); *State v. Bonilla*, 23 Wash.App. 869, 873, 598 P.2d 783 (1979); *State v. Forrester*, 21 Wash.App. 855, 861, 587 P.2d 179 (1978). In *Mark*, the court stated, 96 Wash.2d at 497, 635 P.2d 1081 (citation omitted):

> On the public street, or in any other public place, the plaintiff has no legal right to be alone; and it is no invasion of his privacy to do no more than follow him about and watch him there. Neither is it such an invasion to take his photograph in such a place, since this amounts to nothing more than making a record, not differing essentially from a full written description, of a public sight which anyone would be free to see.

*Mark* dealt with photography, not with sound recording, but its point that reasonable privacy expectations do not extend to what can readily be seen in a public place could apply to what can readily be heard by passersby in such a place.

Even more clearly, the state would not apply the statute to the recording of a conversation in the street, audible to others, between two police officers, or between officers and a citizen, held in the course of the officers' duties. The Washington Court of Appeals so decided in 1992. *State v. Flora*, 68 Wash.App. at 806, 808, 845 P.2d 1355.

The Federal Communications Commission has reached a similar conclusion in its official report accompanying a regulation, 47 C.F.R. § 2701, which, like the Washington statute, prohibits the recording of "private conversations":

> The proposed rules specifically refer to "private conversations." The interpretations applied to that phrase by the courts indicate that the phrase does not embrace

conversations carried on within earshot of others not engaged in the conversation. Thus, conversations in public and semi-public places or in any other place where persons may reasonably expect their conversations to be overheard would not be protected by the rules.

*In the Matter of Amendment of Parts 2 and 15 of Commission's Rules to add regulations prohibiting the use of radio devices for eavesdropping purposes*, No. 15262 (FCC, Feb. 28, 1966) (footnote omitted); *see Brooks v. American Broadcasting Cos., Inc.*, 737 F.Supp. 431, 437 (N.D.Ohio 1990) (citing FCC regulation), *aff'd in part, vacated and remanded in part on other grounds*, 932 F.2d 495 (6th Cir.1991).

This construction of the statute conforms to its constitutionally allowable meaning in the context of the present case. The gathering and dissemination of news from public sources is fully protected by the First Amendment. *See, e.g., Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975). The rights of having access to public events and communicating news relating to them are enjoyed by all persons, not just the mass media. *Branzburg*, 408 U.S. at 704, 92 S.Ct. at 2668. If information is in fact public, a state cannot punish its dissemination by categorizing it as "private." *E.g., Florida Star v. B.J.F.*, 491 U.S. 524, 541, 109 S.Ct. 2603, 2613, 105 L.Ed.2d 443 (1989).

This decision does not mean that there could *never* be a private conversation in a public place (for example, in tones not audible to third persons), or that surreptitious recording without consent is beyond the reach of legislation. Those questions are not raised in this case. The decision means only that RCW 9.73.030 does not prohibit the recording of a conversation held in a public street, within earshot of passersby, by means of a readily apparent recording device. To that extent, plaintiff is entitled to a declaratory judgment.

## IX. OTHER ISSUES RAISED

The remaining issues relate to plaintiff's contention that section 4 of RCW 9.73.-

030 discriminates unconstitutionally against freelancers such as himself by affording to the established media a presumption of consent to record a private conversation.

Section 4 does not give the "regularly published" media an exemption from the requirement of having consent; rather, it establishes a method of proving consent. Consent is deemed to exist "if the consent is expressly given"—which adds nothing to what would be true regardless of who the recorder is. In addition, an "employee of any regularly published" news medium who is "acting in the course of bona fide news gathering duties" is deemed to have consent "if the recording or transmitting device is readily apparent or obvious to the speakers." If consent is given but withdrawn, the withdrawal "shall not prohibit any such employee ... from divulging the communication or conversation."

There are obvious reasons to question whether a statutory presumption of consent to record a private conversation could constitutionally be afforded to the "regularly published" media while being denied to other media or, for that matter, to a person recording simply out of interest or curiosity. But that issue does not need to be decided now. Plaintiff has sought only relief entitling him to record audible conversations in public streets with readily visible equipment. The case does not require or justify any relief beyond the declaratory judgment provided for above. The issues argued as to section 4 are moot for purposes of this case and should not be reached. A constitutional question must not be ruled upon "in advance of the necessity of deciding it." *Brockett,* 472 U.S. at 501, 105 S.Ct. at 2801.

## X. CONCLUSION

The motions for summary judgment are granted in part and denied in part in accordance with the foregoing. Plaintiff will have a declaratory judgment establishing that RCW 9.73.030 does not prohibit the videotaping or sound-recording of conversations held in a public street, within the hearing of persons not participating in the conversation, by means of a readily apparent recording device. Judgment will be entered for defendants on plaintiff's claims for damages and injunctive relief. Since plaintiff has achieved substantial relief, he is the prevailing party and will recover his taxable costs. The clerk will enter judgment accordingly.