55 F.3d 436
 23 Media L. Rep. 2011
 Jerry Edmon FORDYCE, Plaintiff-Appellee,
v.
CITY OF SEATTLE, Defendant-Appellant.
Jerry Edmon FORDYCE, Plaintiff-Appellant,
v.
CITY OF SEATTLE; M.S. Donnelly; C. Villagracia,
Defendants-Appellees. (Two Cases.)
Jerry Edmon FORDYCE, Plaintiff-Appellee,
v.
CITY OF SEATTLE, Defendant-Appellant,
and
M.S. Donnelly; C. Villagracia, Defendants.
 Nos. 93-35824, 93-35840, 93-35991 and 93-36020.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1994.
Submission Withdrawn Oct. 20, 1994.
Resubmitted Feb. 27, 1995.
Decided May 16, 1995.
 
 Ted Buck, Stafford Frey Cooper, Seattle, WA, for defendants-appellants-appellees.
 James E. Lobsenz, Carney, Badley, Smith & Spellman, Seattle, WA, for plaintiff-appellee-appellant.
 Appeals from the United States District Court for the Western District of Washington.
 Before: LAY,* TROTT and T.G. NELSON, Circuit Judges.
 TROTT, Circuit Judge:
 
 I. Background
 
 1
 This case arises from the alleged interference by police officers of the City of Seattle with Jerry Edmon Fordyce's attempt on August 5, 1990 to videotape a public protest march. Fordyce, who apparently considered himself part of the protest, had volunteered to videotape the demonstration for "local television production," presumably for broadcast on a public access channel. Among his subjects were the activities of the police officers assigned to work the event. Not surprisingly, the police themselves became targets of the protest and were subjected to rude and profane insults. Generally, the police reacted to this treatment in a calm and professional manner, but the record suggests that some of these officers were not pleased with Fordyce's actions, and that one officer in particular attempted physically to dissuade Fordyce from his mission. At the end of the day, in a separate incident, a different officer arrested Fordyce when he attempted to videotape some sidewalk bystanders against their wishes. Fordyce was charged with violating a Washington State privacy statute, Wash.Rev.Code Sec. 9.73.030, which forbids the recording of private conversations without the consent of all participants.[1] Fordyce spent the night in jail. On October 1, 1990, the charges against Fordyce were dismissed on motion of the prosecuting attorney.
 
 
 2
 Subsequently, Fordyce brought a civil-rights suit against the City of Seattle and eight Seattle police officers. Fordyce sought damages from the officers in their individual capacities pursuant to 42 U.S.C. Sec. 1983 for interfering with his First Amendment right to gather news and for arresting him without the requisite probable cause for allegedly violating Wash.Rev.Code Sec. 9.73.030. He also invoked supplemental jurisdiction in order to seek damages from the officers in their individual capacities for violations of state tort law. Fordyce sought permanent injunctive relief against the City of Seattle and the officers forbidding enforcement of Wash.Rev.Code Sec. 9.73.030 against amateur journalists such as himself, and sought damages from the City of Seattle pursuant to Sec. 1983 and supplemental state tort claims. Fordyce demanded attorney's fees pursuant to 42 U.S.C. Sec. 1988.
 
 
 3
 The defendants moved for summary judgment, and Fordyce moved for partial summary judgment. The district court granted the defendants' motion for summary judgment as to Fordyce's pre-arrest Sec. 1983 and state tort claims, finding "no evidence that would permit a rational jury to find that he was assaulted." Fordyce v. City of Seattle, 840 F.Supp. 784, 788 (W.D.Wash.1993). The district court also granted the defendants' motion for summary judgment as to Fordyce's damages claims pursuant to Sec. 1983 and state law torts, concluding that the individual police officers were qualifiedly immune and the city nonliable. Id. at 788-91.
 
 
 4
 The district court declined to award Fordyce the injunctive relief he had requested. Instead, the district court sua sponte awarded Fordyce declaratory relief, which he had not requested, declaring that Wash.Rev.Code Sec. 9.73.030 "does not prohibit the videotaping or sound-recording of conversations held in a public street, within the hearing of persons not participating in the conversation, by means of a readily apparent recording device." Id. at 794.
 
 
 5
 After entry of the declaratory judgment, Fordyce requested attorney's fees against the City of Seattle (but not against the defendant police officers). The defendants requested attorney's fees as well, on the ground that Fordyce's suit had been frivolous as to certain individual officers. On October 13, 1993, the district court issued two unpublished orders. The first granted attorney's fees to Fordyce as a "prevailing party" under 42 U.S.C. Sec. 1988, but only in the amount of 20 percent of the fees Fordyce had requested. The second denied attorney's fees to the defendants.
 
 
 6
 Both parties appeal the district court's orders. The City of Seattle and the individual defendants appeal the district court's award of declaratory relief, award of attorney's fees to Fordyce as a "prevailing party," and denial of the defendants' attorney's fees. Fordyce appeals the district court's grant of summary judgment to the City and the individual officers and the amount of attorney's fees awarded to him. We affirm in part, reverse in part, vacate in part, and remand.
 
 II. Liability and Damages
 
 7
 The district court based some of its dispositive rulings on its conclusion that the record contained "no evidence that would permit a rational jury to find that [Fordyce] was assaulted." Fordyce, 840 F.Supp. at 788. We respectfully disagree. As we read the record, a genuine issue of material fact does exist regarding whether Fordyce was assaulted and battered by a Seattle police officer in an attempt to prevent or dissuade him from exercising his First Amendment right to film matters of public interest. Fordyce testified in a deposition that his camera was deliberately and violently smashed into his face by Officer Elster while Fordyce was publicly gathering information with it during the demonstration. Although corroboration is not required to establish a genuine issue of material fact when the issue is established by sworn testimony, Fordyce's allegation is nonetheless corroborated by his videotape, which is in the record and which we have reviewed. Thus, as to Officer Elster, the matter did not merit a grant of summary judgment with respect either to the First Amendment claims under 42 U.S.C. Sec. 1983 or to the supplemental state law claims of assault and battery. These claims merit a trial.
 
 
 8
 As to the Sec. 1983 claims stemming from Fordyce's arrest, we agree with the district court that the officers are entitled to qualified immunity from suit for damages. Act Up!/Portland v. Bagley, 988 F.2d 868 (9th Cir.1993).
 
 
 9
 The relevant facts are undisputed. While Fordyce was videotaping people on the streets of Seattle, he was simultaneously audio-recording them as well. Prior to arresting Fordyce, an officer asked him whether the videocamera was recording voices and warned him that a Washington State statute forbade recording private conversations without consent. Fordyce refused to stop videotaping two boys after an adult relative supervising them asked him to stop and complained to the police. The police officers also asked Fordyce to stop, but he refused. He was then arrested for violating Wash.Rev.Code Sec. 9.73.030.
 
 
 10
 At the time of Fordyce's arrest, whether and under what circumstances conversations in public streets could be deemed private within the meaning of the privacy statute was not yet settled under Washington state law. Under the facts marshalled pursuant to the motions for summary judgment, a reasonable officer could have believed Fordyce was recording private conversations in violation of the statute. The evidence before the district court supports a claim that the officers arrested Fordyce for committing in their presence what they believed was a misdemeanor. Accordingly, all the individual police officer defendants are entitled to qualified immunity with respect to Fordyce's Sec. 1983 damages claims relating to his arrest.
 
 
 11
 We also affirm the district court's decision granting summary judgment to the City of Seattle, dismissing it from the Sec. 1983 damages claims. Fordyce failed to show that the City of Seattle was culpable by virtue of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by" Seattle that was itself unconstitutional. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). Fordyce also failed to show that any Seattle policy or any decision by a governmentally authorized decisionmaker was the moving force behind any deprivation of his constitutional rights. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986); Larez v. City of Los Angeles, 946 F.2d 630, 645-46 (9th Cir.1991).
 
 
 12
 Because our opinion reinstates Office Elster as a defendant in this case, however, we vacate and remand to the district court the issue of whether Seattle can be held vicariously liable under state law for Fordyce's state law tort damages claims against Officer Elster.
 
 III. Declaratory and Injunctive Relief
 
 13
 The City of Seattle argues that the district court should not have granted declaratory relief because (1) Fordyce lacked standing; and (2) Fordyce never served the Attorney General of Washington State with a copy of his complaint. We vacate the district court's grant of declaratory relief because the procedure resulting in the award was flawed.
 
 
 14
 First, the City contends that declaratory relief was unwarranted because no "case or controversy" exists, and therefore the district court lacked subject matter jurisdiction. U.S. Const. art. III, Sec. 2. Seattle also argues that Fordyce did not have standing. We disagree with the City.
 
 
 15
 At the time Fordyce was arrested, and at the time the district court issued its order, the highest court in Washington had not--and still has not--interpreted Wash.Rev.Code Sec. 9.73.030 to permit recording of audible conversation among private citizens on public streets.[2] Fordyce was, and still is, uncertain and insecure regarding his right vel non to videotape and audiotape private persons on public streets. Noting that Fordyce says he will continue to participate in such activities, we are unable to conclude from the record that the circumstances culminating in his arrest no longer are a "brooding presence," which cast an adverse effect on his legitimate interests as a citizen of the United States. Headwaters, Inc. v. Bureau of Land Management, 893 F.2d 1012, 1015 (9th Cir.1989) (quoting Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974)).
 
 
 16
 We are satisfied that, under the facts of this case as they existed during the time of litigation in district court, Fordyce sufficiently demonstrated the existence of a concrete controversy. Furthermore, in a case concerning the constitutionality of a state criminal statute, all that is required for an award of declaratory relief is that the plaintiff show "a genuine threat of enforcement of a disputed state criminal statute." Steffel v. Thompson, 415 U.S. 452, 475, 94 S.Ct. 1209, 1223-24, 39 L.Ed.2d 505 (1974). Thus, assuming that declaratory relief as an issue was properly before the district court, Fordyce had standing to be eligible for such relief pursuant to the principles enunciated in Steffel.[3]
 
 
 17
 The City next argues that the declaratory judgment was defective because it was awarded without service of "the proceeding" on the Washington State Attorney General in violation of a Washington State statute. In a suit challenging a Washington State statute, Wash.Rev.Code Sec. 7.24.110 provides that "the Attorney General shall also be served with a copy of the proceeding and be entitled to be heard."
 
 
 18
 We disagree with the City of Seattle that a state notice statute can be construed to impose a duty on a federal court. The Eleventh Amendment to the United States Constitution would bar federal court jurisdiction if Fordyce sought to sue the State of Washington. Although the State of Washington may waive the protection of the Eleventh Amendment's jurisdictional bar by passing a statute consenting to be sued, a statute consenting to suit in state court does not constitute consent to suit in federal court. Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 149-50, 101 S.Ct. 1032, 1033-34, 67 L.Ed.2d 132 (1981); Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946). Thus, even if Wash.Rev.Code Sec. 7.24.110 were a statute consenting to suit, it could not be construed to require joinder of the State in Fordyce's suit in federal court.
 
 
 19
 We do agree with the thrust of Seattle's argument, however. The State of Washington could waive Eleventh Amendment protection by voluntarily appearing and defending on the merits. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); Clark v. Barnard, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883). And the statute on which the City relies certainly manifests a decision by the State that its attorney general has a strong interest in defending the State's statutes in court. Voluntary appearance by the State of Washington assumes, however, that the State has been adequately notified of the pendency of the suit and of the particular matters at issue.
 
 
 20
 Here the district court never expressly informed the parties that it might render the declaratory judgment. The parties argued their motions for summary judgment on the basis that only injunctive relief and damages were at issue. The district court never indicated otherwise during the oral argument. Subsequent to the hearing on the motions for summary judgment, the district court, sua sponte, issued an order inviting the ACLU of Washington State, several news organizations, and the Washington State Attorney General to file amicus briefs addressing six specific questions framed by the district court.[4] The ACLU's amicus brief first raised the possibility of declaratory relief, but even Fordyce's reply brief to the amicus briefs casts the issues solely in terms of injunctive relief. The parties essentially had no inkling that the district court was silently considering a grant of declaratory relief.
 
 
 21
 We conclude the district court failed to comply with 28 U.S.C. Sec. 2403(b) by failing to notify the Washington State Attorney General that it might rule on the constitutionality of Wash.Rev.Code Sec. 9.73.030. When neither a state nor "any agency, officer, or employee thereof" is a party to an action where the constitutionality of a state statute "is drawn in question," a federal district court is required to notify the state attorney general and must "permit the State to intervene." 28 U.S.C. Sec. 2403(b). Here, no representative of the State of Washington was a party to the action. The City of Seattle was not an "agency" of the state of Washington for purposes of this federal statute. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572-73, 50 L.Ed.2d 471 (1977) (Eleventh Amendment immunity does not extend to counties or similar municipal corporations). By state law, a municipal corporation is not a state agency. Plumbers & Steamfitters Union Local 598 v. WPPSS, 44 Wash.App. 906, 724 P.2d 1030, 1033 (1986) (citing Wash.Rev.Code Sec. 42.17.020(1)).
 
 
 22
 Fordyce argues that the district court indicated its "intentions" in plenty of time for the State of Washington to intervene, if the State had so desired. We conclude that such "telegraphed" intentions are not enough to avoid the duty to provide adequate notice and a formal opportunity to intervene to the State. Because the City's presence in the suit did not satisfy the requirements of 28 U.S.C. Sec. 2304(b), and the issue was never certified to the Attorney General of Washington State, the district court never had the opportunity fully to hear the views of Washington State. See Yniguez v. Arizona, 939 F.2d 727, 739 (9th Cir.1991). Therefore the district court should not have rendered the declaratory relief.
 
 
 23
 We also conclude that the opportunity to file an amicus brief in no way substituted for a formal opportunity to participate fully as an intervening party in the litigation. The "opportunity" for the Washington State Attorney General to participate in this lawsuit was circumscribed along the lines of a jury's special verdict form. If declaratory relief concerning the constitutionality of Wash.Rev.Code Sec. 9.73.030 was an issue under consideration by the district court, the State of Washington should have been invited to intervene. The district court abused its discretion by not formally extending an opportunity to the State of Washington to intervene in this action.
 
 
 24
 For the foregoing reasons, we conclude that although Fordyce may have had standing to be eligible for declaratory relief, the district court abused its discretion in failing to provide the State of Washington (or the City of Seattle) an adequate opportunity to be heard when it contemplated granting an unrequested declaratory judgment ruling on the constitutionality of Wash.Rev.Code Sec. 9.73.030.
 
 IV. Conclusion
 
 25
 For the foregoing reasons, we REVERSE and REMAND the district court's grant of summary judgment as to Officer Elster because a genuine issue of material fact exists concerning Officer Elster's alleged assault and battery against Fordyce prior to Fordyce's arrest. We also REVERSE and REMAND the grant of summary judgment as to Officer Elster on the Sec. 1983 claims, because a genuine issue of material fact exists concerning whether he interfered with Fordyce's First Amendment right to gather news. We AFFIRM the grant of summary judgment as to all the individual officer defendants on the Sec. 1983 damages claims relating to Fordyce's arrest. We AFFIRM the grant of summary judgment to the City of Seattle for Fordyce's Sec. 1983 damages claim. We VACATE and REMAND for reconsideration the grant of summary judgment as to the vicarious liability Seattle may have for Fordyce's state law tort claims for damages against Officer Elster. We VACATE the award of declaratory relief against the defendants. We do not reach the issue of attorney's fees under 42 U.S.C. Sec. 1988, but VACATE the two attorney's fees orders dated October 13, 1993, and REMAND those matters to the district court for reconsideration in light of our decisions in this appeal.
 
 
 26
 AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, and REMANDED.
 
 
 27
 Each party shall bear its own costs.
 
 
 
 *
 The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Wash.Rev.Code Sec. 9.73.030 provides in relevant part:
 (1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
 ...
 (b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.
 ...
 (4) An employee of any regularly published newspaper, magazine, wire service, radio station, or television station acting in the course of bona fide news gathering duties on a full time or contractual or part time basis, shall be deemed to have consent to record and divulge communications or conversations otherwise prohibited by this chapter if the consent is expressly given or if the recording or transmitting device is readily apparent or obvious to the speakers. Withdrawal of the consent after the communication has been made shall not prohibit any such employee of a newspaper, magazine, wire service, or radio or television station from divulging the communication or conversation.
 
 
 [2]
 See, e.g., Fordyce, 840 F.Supp. at 792-93 (discussing Washington state court decisions interpreting Wash.Rev.Code Sec. 9.73.030). Since the date of the district court's order, the Washington supreme court opinions construing Wash.Rev.Code Sec. 9.73.030 have not clarified whether conversations on public streets may be videotaped and audiotaped with impunity. See State v. Corliss, 123 Wash.2d 656, 870 P.2d 317 (1994) (statute does not apply to police officer merely listening to conversation without recording it on same telephone receiver tipped in his direction by informant); State v. Riley, 121 Wash.2d 22, 846 P.2d 1365 (1993) (line trap discovering only telephone number is not a recording of a "private communication")
 
 
 [3]
 We do not rule out a different conclusion on remand based on a demonstration of different facts and circumstances. See Blair v. Shanahan, 38 F.3d 1514 (9th Cir.1994)
 
 
 [4]
 The questions for the amici curiae were as follows:
 
 
 [1]
 Can a conversation between two private citizens standing on a public street or sidewalk be a "private conversation" within the meaning of the statute?
 
 
 [2]
 Can a conversation between two on-duty city police officers on a public street or sidewalk be a "private conversation" within the meaning of the statute?
 
 
 [3]
 Section 4 of the statute affords a presumption of consent where the recording is made by an "employee of any regularly published newspaper, magazine, wire service, radio station, or television station" and the "recording or transmitting device is readily apparent or obvious to the speakers." The plaintiff in the present case was videotaping in downtown Seattle for the purpose of showing his tape later over a public-access television station, where he had often broadcast before. If section 4 is applied to afford a presumption of consent to a paid employee of, or contractor with, a "regularly published" communications medium, but to deny it to a freelance, unpaid news-gatherer, would the result be to discriminate against the latter in violation of his or her First Amendment rights?
 
 
 [4]
 If the answer to the previous question is yes, can and should the statute be read to afford the presumption of consent to all persons "acting in the course of bona fide news gathering"? If so, is there a constitutional way to distinguish between "bona fide newsgathering" and the recording of events for other purposes?
 
 
 [5]
 If the statute is applied to afford a presumption of consent to one engaged in "bona fide news gathering," while denying it to a person who is recording simply out of interest or curiosity, would the result be an unconstitutional discrimination against the latter in violation of his or her First Amendment rights?
 
 
 [6]
 If the answer to the preceding question is yes, can and should the statute be read to afford the presumption of consent to any person recording "if the recording or transmitting device is readily apparent or obvious to the speakers"?