**KISS CATALOG, LTD, etc.,
et al., Plaintiffs,**

v.

**PASSPORT INTERNATIONAL
PRODUCTIONS, INC., etc.,
et al., Defendants.**

No. CV 03–8514 DSF (CWx).

United States District Court,
C.D. California.

Dec. 21, 2005.

Barry E. Mallen, Joy T. Teitel, Manatt Phelps & Phillips, Los Angeles, CA, for Plaintiffs.

Michael R. Blaha, Michael R. Blaha Law Offices, Santa Monica, CA, for Defendants.

ORDER GRANTING MOTION TO RE-
CONSIDER, VACATING FINDING
OF UNCONSTITUTIONALITY,
AND DENYING DEFENDANTS'
MOTION TO DISMISS ON
GROUNDS OF UNCONSTITU-
TIONALITY

FISCHER, District Judge.

## INTRODUCTION AND PROCEDURAL BACKGROUND

On December 21, 2004, the Honorable William J. Rea, to whom this case was originally assigned, granted Defendants' motion to dismiss the Seventh Claim for Relief for violation of 17 U.S.C. § 1101, the anti-bootlegging statute, finding that § 1101(a)(3) violated the "for limited Times" requirement of the Copyright Clause and was therefore unconstitutional. *KISS Catalog v. Passport Int'l Prods.*, 350 F.Supp.2d 823, 837 (C.D.Cal.2004) ("Order").

The United States learned of this finding only after the Order was entered, and sought leave to intervene in the action. On June 7, 2005, Judge Rea granted that request. On August 5, 2005, due to Judge Rea's death, the action was transferred to this Court for all further proceedings. This matter is now before the Court on the motion of the United States to reconsider the finding that § 1101(a)(3) ("Statute") is unconstitutional.[1] Plaintiffs have joined in the motion; Defendants have opposed it.

## DISCUSSION

### I. THE MOTION TO RECONSIDER IS GRANTED

When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action in which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28, U.S.C. § 2403.[2] ... A party challenging the constitutionality of legislation should call the attention of the court to its consequential duty, but failure to do so is not a waiver of any constitutional right otherwise timely asserted.

Fed.R.Civ.P. 24(c). Neither Defendants nor the Court complied with this Rule.

■ Failure fully to consider the position of the United States would be an abuse of discretion. *See Fordyce v. City of Seattle*, 55 F.3d 436, 442 (9th Cir.1995) (failure to allow state attorney general "to participate fully" where constitutionality of state statute was challenged was abuse of discretion). The Court therefore grants the motion of the United States to reconsider the Order.[3]

---

1. Defendants also moved to dismiss the Seventh Claim for Relief on the grounds that it was inconsistent with the Eighth Claim for Relief for copyright infringement, and that the alleged conduct occurred before the time period covered by § 1101. In addition, Defendants moved to dismiss the Eighth Claim on the grounds that it conflicted with an exhibit attached to the complaint and was inconsistent with the Seventh Claim. Judge Rea denied those portions of the motion. *KISS Catalog,* 350 F.Supp.2d at 826–29. The United States does not seek reconsideration of those portions of the Order.

2. 28 U.S.C. § 2403(a) provides:

   In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene ... for argument on the question of constitutionality.

3. Defendants argue that the request for reconsideration should be denied because the United States cannot point to any new law or new evidence, and that Local Rule 7–18 likewise does not permit reconsideration. The authorities cited by Defendants do not contemplate the situation where a party legally permitted to participate was excluded from the proceedings.

## II. SECTION 1101(a)(3) IS A CONSTITUTIONAL EXERCISE OF CONGRESS' COMMERCE CLAUSE POWER

17 U.S.C. § 1101(a) provides:

Anyone who, without the consent of the performer or performers involved—

(1) fixes the sounds or sounds and images of a live musical performance in a copy or phonorecord, or reproduces copies or phonorecords of such a performance from an unauthorized fixation,

(2) transmits or otherwise communicates to the public the sounds or sounds and images of a live musical performance, or

(3) distributes or offers to distribute, sells or offers to sell, rents or offers to rent, or traffics in any copy or phonorecord fixed as described in paragraph (1), regardless of whether the fixations occurred in the United States, shall be subject to the remedies provided in sections 502 through 505 to the same extent as an infringer of copyright.

■ Until Judge Rea's Order, no published decision had yet addressed the constitutionality of 17 U.S.C. § 1101(a)(3). Only two, *United States v. Moghadam*, 175 F.3d 1269 (11th Cir.1999), *cert. denied*, 529 U.S. 1036, 120 S.Ct. 1529, 146 L.Ed.2d 344 (2000), and *United States v. Martignon*, 346 F.Supp.2d 413 (S.D.N.Y.2004), discuss a related criminal statute, 18 U.S.C. § 2319A.[4] *Moghadam* and *Martignon*, after a careful consideration of whether the anti-bootlegging[5] legislation is a constitutional exercise of congressional power under the Copyright Clause or the

Commerce Clause, reached opposite conclusions.

This analysis of the constitutionality of the Statute addresses two separate considerations: (a) did Congress have the power to enact the legislation? and (b) if so, is the legislation "fundamentally inconsistent" with the Copyright Clause?

This Court agrees with the analysis of *Moghadam*: the Statute is constitutional.

### A. The Commerce Clause Empowers Congress to Enact the Statute

Because Congress may exercise only those powers granted to it by the Constitution, *e.g.*, *United States v. Lopez*, 514 U.S. 549, 552, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Court must determine whether Congress had the power to enact the Statute in the first instance. The Copyright Clause,[6] U.S. Const. art. I, § 8, cl. 8, the Commerce Clause, *id.* cl. 3, and the Necessary and Proper Clause, *id.* cl. 18, are the generally suggested sources of such power.

Congress may have believed that it was acting pursuant to the Copyright Clause, which provides that Congress has the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." *See Moghadam*, 175 F.3d at 1272 ("[W]hat little legislative history exists tends to suggest that Congress viewed the anti-bootlegging provisions as enacted pursuant to its Copyright Clause authority," citing 140 Cong. Rec. H 11441, H 11457 (daily ed. Nov. 29, 1994) (statement

---

4. All three decisions are thoroughly and impressively researched. This Court relies on their discussion of the history of the anti-bootlegging legislation.

5. "Bootlegging" is "the making of an unauthorized copy of a commercially unreleased performance," and is distinct from "piracy,"

which is an unauthorized duplication of an authorized recording. *Moghadam*, 175 F.3d at 1272 n. 3 (citation and internal quotation marks omitted).

6. This clause has also been referred to as the Intellectual Property Clause.

of Rep. Hughes)); *Martignon*, 346 F.Supp.2d at 419. *But see* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8E.05[A] (2005) ("In the context of Chapter 11 [of Title 17], the question arises how Congress viewed its enactment authority. There is no answer."). The Statute was placed within Title 17, and incorporates the statutory remedies for copyright infringement.[7] 17 U.S.C. § 1101(a).

It appears unlikely, however, that Congress could have derived the power to enact the Statute from the Copyright Clause. *See, e.g., Moghadam*, 175 F.3d at 1274 ("[A]lthough in the modern era the term 'Writings' allows Congress to extend copyright protection to a great many things, those things have always involved some fixed, tangible and durable form."); *KISS Catalog*, 350 F.Supp.2d at 831 ("[I]t would seem that a live performance protected by § 1101 is not a fixed work. . . . Thus, one would be inclined to think that . . . live performances could not be regulated via the Copyright Clause."); *Martignon*, 346 F.Supp.2d at 424 ("[B]y virtue of the fact that it regulates unfixed live performances, the anti-bootlegging statute is not within the purview of Congress' Copyright Clause power."); 1 Nimmer, *Nimmer on Copyright, supra*, § 1.08[C][2] ("If the word 'writings' is to be given any meaning whatsoever, it must, at the very least, denote 'some material form, capable of identification and having a more or less permanent endurance.' " (citation omitted)); Susan M. Deas, *Jazzing Up the*

*Copyright Act? Resolving the Uncertainties of the United States Anti–Bootlegging Law*, 20 Hastings Comm. & Ent. L.J. 567, 578 (1998); David Nimmer, *The End of Copyright*, 48 Vand. L.Rev. 1385, 1409 (1995) ("[N]o respectable interpretation of the word 'Writings' embraces an untaped performance of someone singing at Carnegie Hall.").

■ This does not end the analysis, however, as Congress' intent is not dispositive. *See Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 144, 68 S.Ct. 421, 92 L.Ed. 596 (1948) ("The question of the constitutionality of action taken by Congress does not depend on the recitals of the power which it undertakes to exercise."). Moreover, "[d]ue respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). There is a "presumption of constitutionality." *Id.* Therefore, it is the Court's obligation to look elsewhere for a source of congressional power to enact the Statute.

■ The United States argues that the Commerce Clause grants such authority. This Court agrees with the United States and with the Eleventh Circuit's analysis in *Moghadam*, 175 F.3d at 1274–77. Indeed, Judge Rea believed the Statute could be enacted under the Commerce Clause if not for the conflict with the Copyright Clause.

---

7. Judge Rea held that the Statute did not incorporate 17 U.S.C. § 302, which limits the duration of copyright protection. *KISS Catalog*, 350 F.Supp.2d at 832. At least one author has touted incorporating that durational limit into the Statute as an approach to preserving constitutionality. Angela T. Howe, *United States v. Martignon and Kiss Catalog v. Passport International Products: The Anti–Bootlegging Statute and the Collision of Inter-*

*national Intellectual Property Law and the United States Constitution*, 20 Berkeley Tech. L.J. 829, 851 (2005). The United States had not addressed this issue and the Court requested further briefing. Because the United States agreed that the durational limitation of 17 U.S.C. § 302 cannot be incorporated into the Statute, the Court assumes, without deciding, that it is not incorporated.

*KISS Catalog.,* 350 F.Supp.2d at 833–34 and n. 7 ("[T]hat copyright-like protection for live performances touches on commerce is a proposition that should be without serious dispute.")

Though *Martignon* criticized *Moghadam's* "swift conclusion" that the legislation is authorized under the Commerce Clause (potential Copyright Clause limitations aside), this Court agrees that the Statute is well within Congress' Commerce Clause powers as broadly defined by, *inter alia, Gonzales v. Raich,* —— U.S. ——, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), and *Lopez.* As the United States Supreme Court most recently made clear in these cases,[8] Congress' authority to enact legislation pursuant to the Commerce Clause has been interpreted broadly in the modern era. Indeed, Supreme Court "case law firmly establishes Congress' power to regulate [even] purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Raich,* 125 S.Ct. at 2205 (citations omitted). This is true even where the affected market is an illegal one. *Id.* at 2206 (acknowledging an illegal market for marijuana).

*Moghadam* assumed, without deciding, that the anti-bootlegging legislation could not stand under the Copyright Clause. 175 F.3d at 1274. It simply turned to an alternate source, the Commerce Clause, noting that the test of constitutionality under that clause is " 'whether a rational basis existed for concluding that a regulated activity sufficiently affected interstate commerce.' " *Id.* at 1275 (quoting *Lopez,* 514 U.S. at 557, 115 S.Ct. 1624). Even in the absence of legislative findings of an

interstate commerce nexus, the court easily concluded: "The link between bootleg compact discs and interstate commerce and commerce with foreign nations is self-evident." *Id.* at 1276. "Bootleggers depress the legitimate markets because demand is satisfied through unauthorized channels." *Id.* In addition, that § 1101 was enacted in connection with an international treaty called for by the World Trade Organization establishes its connection with—if not its reliance on—interstate and international commerce. *Id.; accord* Howe, *supra,* at 846 (citing, *inter alia,* Office of United States Trade Representative, at *http://www.ustr.gov.* (last visited March 19, 2005)).

This Court finds that the Commerce Clause grants Congress the power to enact the Statute.[9]

## B. The Statute Is Not "Fundamentally Inconsistent" With the Copyright Clause

Though Judge Rea and the court in *Martignon* next considered whether the anti-bootlegging law was fundamentally inconsistent with the Copyright Clause, that step is not necessarily mandated. Arguably, a determination that the Statute does not fall within the ambit of the Copyright Clause ends the analysis.

> In general, the various grants of legislative authority contained in the Constitution stand alone and must be independently analyzed. In other words, each of the powers of Congress is alternative to all of the other powers, and what cannot be done under one of them may very well be doable under another.

---

**8.** *Raich,* of course, was issued after both Judge Rea and the court in *Martignon* considered the issue.

**9.** Because the Court finds § 1101(a)(3) valid under the Commerce Clause, the Court need

not consider whether it might alternatively be authorized under the Necessary and Proper Clause. There has been some suggestion that the Necessary and Proper Clause would even more clearly provide a constitutional source for the Statute. Howe, *supra,* at 847–50.

*Moghadam*, 175 F.3d at 1277 (citing *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), and *The Trade–Mark Cases*, 100 U.S. 82, 25 L.Ed. 550 (1879)).

In contrast, *Martignon*, concluded:

In order to give meaning to the express limitations provided in the Copyright Clause, when enacting copyright-like legislation, such as the anti-bootlegging statute, ... Congress may not, if the Copyright Clause does not allow for such legislation, enact the law under a separate grant of power, even when that separate grant provides proper authority.

346 F.Supp.2d at 424–25. The court provides no authority for this conclusion, however. Instead, as discussed below, it reads the Copyright Clause too broadly, and circumscribes Congress' power under other constitutional grants of authority too narrowly.

Judge Rea, following *Martignon*, deemed the Statute "copyright-like," *KISS Catalog*, 350 F.Supp.2d at 830, and then proceeded to the conclusion that the power to regulate a subject matter that admittedly does not fall within the parameters of the Copyright Clause is nevertheless subject to the limitations imposed by that clause. *Id.* at 837. This characterization, even if valid, is not particularly helpful. As the United States points out, nothing prohibits Congress from protecting similar things in different ways—so long as some provision of the United States Constitution allows it to do so. *Railway Labor Executives' Association v. Gibbons*, 455 U.S. 457, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982) is not to the contrary. There the Supreme Court examined the definition of "bankruptcy," the language of the challenged legislation, the events surrounding its passage, and its legislative history, and concluded that "Congress was exercising its powers under the Bankruptcy Clause."

*Id.* at 466–68. In other words, it was a bankruptcy statute—not a "bankruptcy-like" statute. Neither the appellant nor the United States argued that Congress could have enacted the law pursuant to the Commerce Clause. *Id.* at 468. The Supreme Court noted that the Commerce Clause does not require uniformity of regulation; therefore, if it held that the Commerce Clause did provide authority for nonuniform bankruptcy laws, the Court "would eradicate from the Constitution a limitation on the power of Congress to enact bankruptcy laws." *Id.* at 468–69, 102 S.Ct. 1169.

The analysis here is different. All parties, and all authorities cited, agree that Congress does not have the authority to legislate concerning live performances under the Copyright Clause. Finding that Congress does have the authority to do so under the Commerce Clause does not negate any of the purposes of, protections afforded by, or limitations established by, the Copyright Clause. Thus the *Railway Labor* analysis does not apply. *Accord* Adam Giuliano, *Steal This Concert? The Federal Anti–Bootlegging Statute Gets Struck Down, But Not Out*, 7 Vand. J. Ent. L. & Prac. 373 (2005); *cf. United States v. Elcom Ltd.*, 203 F.Supp.2d 1111, 1138–42 (N.D.Cal.2002) (Digital Millenium Copyright Act within Congress' Commerce Clause power due to lack of fundamental inconsistency with Copyright Clause).

The Court again agrees with the United States (and *Moghadam*) that the analysis of *The Trade–Mark Cases* is more to the point. There, the Supreme Court noted that legislation that could not be permitted under the Copyright Clause could nevertheless pass muster under the Commerce Clause—if the independent requirements of that clause were met. 100 U.S. at 94–96. Under the more restrictive view of the Commerce Clause that prevailed at the

time, those requirements were not met. *Id.* As noted above, modern case law has expanded the interpretation of the Commerce Clause and modern cases upholding trademark protection are based on the Commerce Clause. *See, e.g., Jellibeans, Inc. v. Skating Clubs of Ga., Inc.,* 716 F.2d 833, 838 (11th Cir.1983). Therefore, once the Court concludes that the Statute does not fall within the purview of the Copyright Clause, it need no longer consider whether it complies with the limitations of the Copyright Clause. To do so imports into the Commerce Clause limits that clause does not have. That the Statute might provide "copyright-like" or "copyright-related" protection to matters clearly not covered by the Copyright Clause is not important. One need only find an alternative source of constitutional authority. This Court finds such authority in the Commerce Clause. *Cf. Authors League of Am., Inc. v. Oman,* 790 F.2d 220, 224 (2d Cir.1986) (manufacturing clause of the Copyright Act constitutional under the Commerce Clause).

Neither the court in *Martignon* nor Judge Rea gave sufficient deference to the fundamental premise that legislation is presumed to be constitutional. *See Morrison,* 529 U.S. at 607, 120 S.Ct. 1740. Rather, they seemed to feel compelled to choose between the several enumerated powers that might apply—and to choose in a way that rendered the Statute unconstitutional (at least in their view) for failure to meet the "for limited Times" limitation. The *Martignon* court concluded: "That the anti-bootlegging statute has its roots in an inter-country initiative cannot save the statute; it does not serve to transform what appears on its face to be an intellectual property statute into one whose primary purpose is to regulate commerce." 346 F.Supp.2d at 421. But nowhere does the court explain why only a statute's "primary purpose" can be considered in determining its constitutionality.

As noted, the Copyright Clause allows Congress to protect a narrowly defined subject matter within defined parameters. The Statute addresses a similar, but different, subject matter. This Court agrees with *Moghadam:*

> We hold that the Copyright Clause does not envision that Congress is positively forbidden from extending copyright-like protection under other constitutional clauses, such as the Commerce Clause, to works of authorship that may not meet the fixation requirement inherent in the term "Writings." The grant itself is stated in positive terms, and does not imply any negative pregnant that suggests that the term "Writings" operates as a ceiling on Congress' ability to legislate pursuant to other grants. Extending quasi-copyright protection to unfixed live musical performances is in no way inconsistent with the Copyright Clause, even if that Clause itself does not directly authorize such protection.

175 F.3d at 1280.

At least one author opined that Judge Rea "wrongly ignor[ed] the basic tenet that courts should when possible protect the constitutionality of statutes through their interpretive judgments." 1 Raymond T. Nimmer, Information Law § 6:30 (2005).

> The "fundamental conflict" standard gives deference to the separate, co-equal character of constitutional grants, creating preemptive conflict only where the separate enactment conflicts with a core and explicit, broad limitation of the other constitutional power. In this respect, the Copyright Clause speaks only to the creation of a separate, limited constitutional grant and, unlike concepts such as are in Due Process and Fourth Amendment rules, does not place broad limitations on any and all exercises of congressional power. Thus the [*Mogha-*

*dam* ] court's analysis was clearly correct.

*Id.* As Nimmer goes on to state:

> An important aspect of the *KISS Catalog* [ ] result was its further conclusion that, while the statute could have been enacted under the Commerce Clause (which contains no time limitation), Commerce Clause powers could not be invoked to subvert an express limitation in the Copyright Clause. This conclusion creates an unwarranted hierarchy among otherwise seemingly co-equal constitutional grants and is particularly suspect in a modern era in which Commerce Clause authority is broadly construed. It hinges entirely on the court's belief that, in some fashion, this statute was a "copyright-like" enactment and, thus, governed entirely and solely by the Copyright Clause.

*Id.*

With regard to *Martignon's* holding that the criminal version of the statute also violates the "Writings" provision (an issue not addressed by Judge Rea), Nimmer comments:

> This ... analysis ... only holds if one assumes that the limitations of the Copyright Clause dominate other provisions of the Constitution, a conclusion that is conducive in this instance to a restrictive view of Congressional power to provide for rights in information products, but that has little grounding in constitutional history or the purpose of a clause that was intended to create a power, rather than comprehensively limit governmental conduct.

*Id.*

Even if a "fundamental conflict" with the Copyright Clause would invalidate the Statute, none exists here. Considering whether the Copyright Clause prevents Congress from exercising its Commerce Clause power perpetually to prohibit bootlegging—or more specifically, the dissemination of bootlegged recordings [10]—the Court concludes it does not. As indicated previously, the Statute merely proscribes conduct not otherwise addressed, prohibited or protected by the Copyright Clause: the non-consensual recording of a live performance. Stated differently, what Congress regulates here is an unauthorized and (by this statute) unlawful recording of a live performance, not an authorized, protected, and constitutionally-encouraged fixation of an author's original work. Thus, the Statute complements, rather than violates, the Copyright Clause by addressing similar subject matter, not previously protected—or protectible—under the Copyright Clause. *See* Giuliano, *supra*, at 373 ("Properly construed, the anti-bootlegging statute serves as a complement to copyright regulation, rather than a derogation from it.").

In contrast to *Railway Labor*, the question is not whether legislation empowered by the Copyright Clause—but invalid under it—can otherwise be empowered by the Commerce Clause. The question is whether matters not encompassed within the Copyright Clause can be addressed by the Commerce Clause free of the restrictions of the Copyright Clause. The answer to that question is, clearly, yes.

One does not have to stretch the presumption of constitutionality to conclude that legislation that prevents dissemination in perpetuity of an *unauthorized* videotape by a third-party of a *live performance* does not conflict with a clause that protects, "for limited Times," the voluntarily disseminated "Writings" of authors. That portion of the Order that holds the Statute unconstitutional is hereby vacated.

---

**10.** Only § 1101(a)(3) is at issue here.

*CONCLUSION*

For the reasons stated above, the motion to reconsider is granted, the portion of the Order holding 17 U.S.C. § 1101(a)(3) unconstitutional is vacated, and Defendants' motion to dismiss the Seventh Claim for Relief on the grounds that 17 U.S.C. § 1101(a)(3) is unconstitutional is DENIED.