**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAY ASKINS; CHRISTIAN RAMIREZ,
*Plaintiffs-Appellants*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; DAVID SALAZAR,
Director, Calexico Port of Entry;
SIDNEY K. AKI, Director, San Ysidro
& Otay Mesa Ports of Entry; KEVIN
K. MCALEENAN, Commissioner of
United States Customs and Border
Protection,
*Defendants-Appellees.*

No. 16-55719

D.C. No.
3:12-cv-02600-
W-BLM

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, Senior District Judge, Presiding

Argued and Submitted February 16, 2018
Pasadena, California

Filed August 14, 2018

Before: Marsha S. Berzon and Jay S. Bybee, Circuit
Judges, and Sharon L. Gleason,[*] District Judge.

Opinion by Judge Bybee

## SUMMARY[**]

### First Amendment / Law of the Case Doctrine

The panel vacated the district court's dismissal of an amended complaint in which plaintiffs – advocates on border policy issues whose photos of activities at U.S. ports of entry on the United States-Mexico border were confiscated and destroyed by U.S. Customs and Border Protection ("CBP") officers – alleged violations of their First Amendment rights, and remanded for further proceedings.

The panel held that the law of the case doctrine did not apply because the district court dismissed the First Amendment claim in the initial complaint without prejudice, and did not enter a final judgment. The filing of the amended complaint did not ask the court to reconsider its analysis of the initial complaint, and the district court should simply have considered the amended complaint on its merits.

---

[*] The Honorable Sharon L. Gleason, United States District Judge for the District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the First Amendment protected the right to photograph and record matters of public interest, and whether a place was "public" depended on the nature of the location. The panel also held that the district court's holding that the CBP policies were the least restrictive means of serving a compelling government interest were conclusory and insufficient to justify judgment for the government on a motion to dismiss. The panel also held that it was the government's burden to prove that the specific restrictions were the least restrictive means available, and general assertions of national security were insufficient. The panel concluded that plaintiffs adequately pleaded their claims; and remanded for further factual development for the district court to determine what restrictions, if any, the government could impose in the public, outdoor areas where the photos were taken.

---

**COUNSEL**

Mitra Ebadolahi (argued) and David Loy, ACLU Foundation of San Diego & Imperial Counties, San Diego, California, for Plaintiffs-Appellants.

Thomas G. Pullham (argued), Patrick G. Nemeroff, and Scott McIntosh, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

Ilya Shapiro, Cato Institute, Washington, D.C., for Amicus Curiae Cato Institute.

Bruce D. Brown, Gregg P. Leslie, and Caitlin Vogus, Reporters Committee for Freedom of the Press; J. Joshua Wheeler, Thomas Jefferson Center for the Protection of Free Expression & The University of Virginia School of Law First Amendment Clinic, Charlottesville, Virginia; for Amici Curiae Reporters Committee for Freedom of the Press and 7 Media Organizations.

---

**OPINION**

BYBEE, Circuit Judge:

Plaintiffs Ray Askins and Christian Ramirez are advocates on border policy issues. In separate incidents, while on public property, they took photographs of activities at U.S. ports of entry on the United States–Mexico border. Both were stopped and searched by officers of the United States Customs and Border Protection ("CBP"), and their photos were destroyed. According to CBP, Askins and Ramirez were on CBP-controlled property when they took the photos. Under CBP's policies, members of the media must obtain advance permission from CBP to photograph, videotape, or film inside or outside of port of entry buildings.

Askins and Ramirez filed suit for violation of their First Amendment rights and sought injunctive and declaratory relief. The district court dismissed plaintiffs' claims, applying strict scrutiny and upholding CBP's policies as the least restrictive means of serving the compelling interest of protecting the United States's territorial sovereignty, but granted leave to file an amended complaint. When plaintiffs filed an amended complaint, the district court dismissed it as barred by the law of the case doctrine.

We conclude that it was error to apply the law of the case doctrine on a motion to dismiss an amended complaint. On the merits, we conclude that plaintiffs have stated First Amendment claims upon which relief can be granted. We vacate the judgment and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' suit stems from two separate incidents. Because the district court dismissed plaintiffs' suit on the government's motion to dismiss, for purposes of this appeal, we must accept as true plaintiffs' allegations in the amended complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 907 (9th Cir. 2012) (en banc).

### A. *The Incidents*

#### 1.  Calexico West

Ray Askins is a U.S. citizen concerned with environmental health hazards in Imperial County and near the U.S.–Mexico border. He has a special interest in the effect of emissions from vehicles idling in the inspection areas at the ports of entry in California on air quality. In April 2012, Askins sought to photograph the secondary vehicle inspection area of the Calexico West port of entry in connection with a conference presentation he was preparing on the health impacts of border crossings. When Askins called CBP to request permission, he was told by an officer that this would be "inconvenient," but his request was neither approved nor denied. The next morning, he informed the officer by voicemail that he would photograph the exit of the secondary inspection area from the street outside instead. The exit of the Calexico West secondary inspection area and a port-of-

entry building exterior are visible from streets on or near the port of entry and from the Genaro Teco Monroy Memorial International Border Friendship Park, a small park.

On the afternoon of April 19, Askins stood at the intersection of First Street and Paulin Avenue on the U.S. side of the border, near the shoulder of the streets and immediately in front of the park. He was approximately 50–100 feet from the exit of the secondary inspection area, and he had not crossed the border or otherwise passed through border security to reach his location. Standing in the street, Askins took three or four photographs of the exit of the secondary inspection area. Multiple CBP officers approached Askins on the street to demand he delete the photographs he had taken. When Askins refused, the officers threatened to smash his camera, then searched and handcuffed him, confiscated his property, and detained him inside a secondary inspection area building. Askins was released after approximately twenty-five to thirty-five minutes and his property was returned, at which time he discovered that CBP had deleted all but one of his photographs of the exit of the secondary inspection area.

Askins alleges that he wishes to photograph "matters and events exposed to public view from outdoor and exterior areas of the Calexico port of entry" and "in the area immediately surrounding the Calexico port of entry building," specifically, "vehicular traffic and CBP officers engaged in the public discharge of their duties, in order to document air and other environmental pollution as well as human rights abuses." He claims that he now refrains from doing so in light of the CBP policies and the past enforcement of those policies against him.

2. San Ysidro

Christian Ramirez is a U.S. citizen and policy advocate who works on human rights issues in border communities. On June 20, 2010, Ramirez and his wife visited his father in Mexico, parking on the U.S. side of the border and crossing through the San Ysidro port of entry pedestrian entrance. They crossed back into the United States later the same day. After they had passed through inspection, the Ramirezes crossed a pedestrian bridge over Interstate 5 to return to their vehicle. While on the bridge, Ramirez observed male CBP officers at a security checkpoint below inspecting and patting down only female travelers. Concerned that the officers might be acting inappropriately, Ramirez observed the checkpoint from the bridge for ten to fifteen minutes and took approximately ten photographs with his cellphone camera.

Ramirez and his wife were approached by men who appeared to be private security officers. The men ordered them to stop taking photographs. The officers also demanded their identification documents, which Ramirez refused to provide as they had already passed through border inspection. The officers radioed for backup as Ramirez and his wife walked away, and at the bottom of the bridge, Ramirez was met by five to seven CBP officers. The CBP officers questioned Ramirez, and, without Ramirez's consent, a CBP officer confiscated Ramirez's cellphone and deleted all of the photographs Ramirez had taken from the bridge. A U.S. Immigration and Customs Enforcement officer confiscated the Ramirezes' passports and walked away, leaving Ramirez surrounded by the CBP officers. After ten to fifteen minutes, their documents were returned to them and the Ramirezes were allowed to leave.

The pedestrian bridge from which Ramirez took the photographs has since been replaced. The new bridge runs east to west, passing over Interstate 5 to connect the San Ysidro Boulevard transit plaza and Camiones Way, both on the U.S. side of the border. Plaintiffs allege that the bridge "is open to and used by the public to cross over Interstate 5," and that "members of the public can and do frequently cross the bridge without crossing the border or entering or exiting any port of entry building." The outdoor vehicle inspection areas in which CBP conducts primary and secondary inspections at the San Ysidro port of entry are visible from the new bridge. Ramirez alleges that he wishes to photograph "matters exposed to public view, including CBP officers engaged in the public discharge of their duties" from the new pedestrian bridge, the San Ysidro Boulevard transit plaza, and a footpath leading from the transit plaza to the border. U.S. government signs posted at these locations prohibit any form of photography. Ramirez claims that he now refrains from documenting matters and events visible from those locations in light of the CBP policies and the past enforcement of those policies against him.

B.  *The Suit*

1.  The Initial Complaint

Plaintiffs filed suit in October 2012 against the Department of Homeland Security, named officials of CBP, and 50 unnamed CBP officers. Plaintiffs claimed that CBP's policies and practices violated their First and Fourth Amendment rights and sought declaratory and injunctive relief, damages, and costs and attorneys' fees. The government moved to dismiss under Rule 12(b)(6) and brought to the court's attention two CBP policies: CBP

Directive No. 5410-001B (Mar. 18, 2009) ("Directive"), a national policy "defin[ing] guidelines relating to the disclosure of official [CBP] information to accredited news organizations, mass media, published professional journals, and stakeholder groups," and CBP's "Ground Rules for News Media Representatives when Visiting Southern California Ports of Entry" ("Ground Rules"). The government argued that, under these policies, any individual seeking to film or take photographs at ports of entry is required to obtain prior authorization.

The district court held that plaintiffs had sufficiently alleged the policies were content-based restrictions on speech in a public forum, triggering strict scrutiny. But the court decided that the policies survived strict scrutiny because they serve "perhaps the most compelling government interest: protecting the territorial integrity of the United States" and there were no less restrictive alternatives. The district court granted the motion to dismiss with leave to amend "with respect to the constitutionality of the CBP photography policy."

2.   The Amended Complaint

Plaintiffs filed an amended complaint in 2015 against the U.S. Department of Homeland Security, the Commissioner of U.S. Customs and Border Protection, and the directors of Calexico West and San Ysidro ports of entry. Plaintiffs omitted any claims based on the Fourth Amendment, dropped their claims for damages, and did not sue the unnamed CBP officers. Plaintiffs also formally challenged the CBP policies identified by the government under the First Amendment. First, they challenge the policies on their face as prior restraints. Second, they challenge the policies as

unreasonable as applied to them. The policies, which we refer to as the "Directive" and the "Ground Rules," require members of the media to obtain advance permission to document events at ports of entry.

Under the Directive, "CBP shall cooperate with accredited local, national, and foreign news organizations, without favoritism, in the dissemination of official information while not compromising the DHS/CBP mission." Section 6.2 provides procedures for media requests to photograph suspects and states that "[d]ecisions to allow any photographing, videotaping or filming by the media at CBP facilities shall be made in consultation with the appropriate Public Affairs Specialist and with the concurrence and control of the appropriate CBP supervisor." It also provides that "[p]hotographing of suspects/detainees by news organizations in public places or in transit is neither encouraged nor discouraged," and instructs CBP that "[w]hen news organizations arrive at the scene of an enforcement action in progress without prior CBP knowledge, CBP personnel shall not interfere with photographing suspects in public places or in transport." The Directive prohibits the "[d]etention of persons or media and/or the detention of recording equipment, film or notes . . . unless the owner or operator of such materials has violated federal law, unlawfully breached the security of a CBP facility, or has endangered the safety of CBP personnel."

The Ground Rules, which apply to the ports of entry involved here, are directed towards "accredited news media representatives" and are motivated by "concerns for the privacy of the traveling public, integrity of law enforcement and investigative activities, and safety of visiting media representatives and the public." They require "members of

the press who desire to film, conduct interviews or engage in any other media activity" to "clear their visit in advance with appropriate CBP officials." Under the Ground Rules, "[r]eporters who do not have such clearance may be denied access to port property," and "photographers and camera crews" must "be escorted by a designated officer at ALL times while on port property," without exception. The Ground Rules prohibit photography in "non-public spaces such as the pat down room and holding cells" and "merchandise storage areas," "close-up" photographs of "port computer screens," and recognizable photographs of CBP officers without their permission "[f]or reasons of officer safety."

Plaintiffs allege that CBP interprets and enforces these policies as a total ban on all photography by any person from any area within a port of entry without prior authorization from CBP. Plaintiffs do not challenge CBP's restrictions on photography within CBP facilities, such as buildings and inspection areas. Rather, plaintiffs allege that there are "large swaths of property" owned or leased by CBP that are public streets and sidewalks, that these constitute traditional public fora, and that CBP enforces its no-photography policies within these areas in violation of the First Amendment.

The government moved to dismiss the amended complaint for failure to state a claim. The district court held that it was "precluded" by the law of the case doctrine from revisiting its prior order. Because plaintiffs brought "the identical issue," but failed to "identify any clear error, intervening change in law, new evidence, changed circumstances, or manifest injustice resulting from the previous decision," "[t]he law of the case bar[red] Plaintiffs'

claims." The district court entered judgment for the government. Plaintiffs timely appealed.[1]

## II. ANALYSIS

Plaintiffs raise two questions on appeal. First, whether the law of the case doctrine applies in this case. Second, whether, on the merits, the district court properly dismissed their suit. We address each issue in turn.

## A. *The Law of the Case Doctrine*

"The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)). The district court determined that it was "precluded" from reconsidering its order dismissing the original First Amendment claims in adjudicating the motion to dismiss the amended First Amendment claims, absent a showing that "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998).

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291. We ordinarily review a district court's application of the law of the case doctrine for abuse of discretion. *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). However, because the final judgment of the district court resulted in dismissal of an amended complaint, we review de novo. *Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1291 (9th Cir. 2015) ("We review the district court's dismissal of the complaint under Rule 12(b)(6) de novo.").

Reasoning that the amended claims raised the same issue as the original claims—the constitutionality of the CBP policies—the court held that the claims were barred because plaintiffs failed to "identify any clear error, intervening change in law, new evidence, changed circumstances, or manifest injustice resulting from the previous decision."

The law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case. The doctrine applies most clearly where an issue has been decided by a higher court; in that case, the lower court is precluded from reconsidering the issue and abuses its discretion in doing so except in the limited circumstances the district court identified. *See*, *e.g.*, *Cuddy*, 147 F.3d at 1114; *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987) ("The rule is that the mandate of an appeals court precludes the district court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal."); *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) ("The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court. . . . A trial court may *not*, however, reconsider a question decided by an appellate court.").

A court may also decline to revisit its own rulings where the issue has been previously decided and is binding on the parties—for example, where the district court has previously entered a final decree or judgment. *See Lummi Indian Tribe*, 235 F.3d at 452–53 (holding that district court did not abuse its discretion to invoke law of the case where its prior decision interpreted 1974 Indian fishing rights decree). The law of the case doctrine does not, however, bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order. *See*

*City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 888–89 (9th Cir. 2001); *Houser*, 804 F.2d at 567; *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

The law of the case doctrine does not apply here. The district court dismissed plaintiffs' First Amendment claim, but without prejudice; it did not enter a final judgment in the case. It specifically granted plaintiffs leave to amend "with respect to the constitutionality of the CBP photography policy." Accepting the district court's invitation, plaintiffs filed an amended complaint, and included facts and claims that were different from those in the initial complaint. Instead of ruling on the merits of the government's motion to dismiss the amended complaint, the district court invoked the law of the case doctrine, holding that it was "precluded" from considering the amended complaint. This was error.

Once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]fter amendment the original pleading no longer performs any function and is treated thereafter as non-existent[.]" (internal quotation marks omitted)). Thus, when an original complaint is dismissed without prejudice, the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint. The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is "precluded" or "barred" by the prior

ruling. When the defendant files a motion to dismiss the amended complaint, it may urge the district court to determine that the plaintiff's amended complaint did not cure the deficiencies of the initial complaint. If the district court determines the amended complaint is substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies. The district court is not, however, bound by any law of the case. The district court may decide the second motion to dismiss in the same way it decided the first, but permitting the filing of an amended complaint requires a new determination. That leaves the district court free to correct any errors or misunderstandings without having to find that its prior decision was "clearly erroneous." *Cuddy*, 147 F.3d at 1114. By contrast, where a final legal determination has been made by a higher court, or by the district court in the same or a related case, the law of the case doctrine allows the court to impose a heightened burden on the plaintiff—to show clear error, changed law, new evidence, changed circumstances, or manifest injustice. *Id.*

Here, the district court erred in dismissing plaintiffs' amended complaint as barred by the law of the case doctrine. By invoking the law of the case doctrine, the district court held plaintiffs to a higher standard than if they had pleaded their amended complaint originally. The district court should simply have considered the amended complaint on its merits. As the district court granted plaintiffs leave to file the amended complaint and both orders are before us on appeal, we have the discretion to proceed to consider de novo whether plaintiffs state a claim in their amended complaint.

B. *Plaintiffs' First Amendment Claims*

In their amended complaint, plaintiffs claim that CBP's policies impose unconstitutional restrictions on their First Amendment right to photograph and record CBP officers engaging in the public discharge of their official duties. They contend that the policies impose a prior restraint and prevent the documentation of civil and human rights abuses, including the excessive use of force and racial or religious profiling, at the border. They do not seek unrestricted access to all areas of ports of entry or unlimited photography privileges, but rather assert a right to photograph only those matters that are "exposed to public view from exterior or outdoor areas of the Calexico and San Ysidro ports of entry." Plaintiffs have alleged that these areas, even if leased or owned by CBP, are public streets and sidewalks that must be considered public fora.

The First Amendment protects the right to photograph and record matters of public interest. *See Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203–04 (9th Cir. 2018); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *cf. Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061–62 (9th Cir. 2010) (holding that the process of creating pure speech is entitled to the same First Amendment protection as the product of that process). This includes the right to record law enforcement officers engaged in the exercise of their official duties in public places. *See Fordyce*, 55 F.3d at 439; *see also*, *e.g.*, *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (recognizing "that the First Amendment protects the filming of government officials in public spaces"); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about

what public officials do on public property, and specifically, a right to record matters of public interest.").

Whether a place is "public" depends on the nature of the location. The government's ability to regulate speech in a traditional public forum, such as a street, sidewalk, or park, is "sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Content-based restrictions on speech are subject to strict scrutiny and may only be upheld if they are "the least restrictive means available to further a compelling government interest." *Berger v. City of Seattle*, 569 F.3d 1029, 1050 (9th Cir. 2009) (en banc). Reasonable, content-neutral, time, place, or manner restrictions, on the other hand, are subject to "an intermediate level of scrutiny." *Jacobson v. U.S. Dep't of Homeland Sec.*, 882 F.3d 878, 882 (9th Cir. 2018) (quoting *Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of L.A.*, 764 F.3d 1044, 1049 (9th Cir. 2014)). They are permitted in public fora so long as they are "narrowly tailored to serve a significant governmental interest," "leave open ample alternative channels for communication of the information," and do "not delegate overly broad licensing discretion to a government official." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023–24 (9th Cir. 2009) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992)). In contrast, restrictions on speech in a nonpublic forum must only be "reasonable in light of the purpose served by the forum and viewpoint neutral." *Jacobson*, 882 F.3d at 882 (internal quotation marks omitted) (quoting *Int'l Soc'y for Krishna Consciousness*, 764 F.3d at 1049).

The district court assumed, for purposes of deciding the government's first motion to dismiss, that the areas adjacent to Calexico West and San Ysidro were public fora and that CBP's restrictions were content based. That meant the government had the burden of demonstrating that its restrictions on speech were the least restrictive means necessary to serve a compelling government interest.[2] The district court found that the CBP policies survived strict scrutiny because of "the extremely compelling interest of border security" and the government's general interest in "protecting United States territorial sovereignty." To this, the government adds that the CBP policies serve compelling government interests in protecting CBP's law enforcement techniques and the integrity of on-going investigations; protecting the privacy of travelers, suspects, and sensitive digital information; ensuring the safe and efficient operation of the ports of entry; and protecting against terrorist attacks. In conclusory fashion, the district court held that the policies were the least restrictive means of serving these interests.

These conclusions are too thin to justify judgment for the government on a motion to dismiss. "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy*

---

[2] On appeal, the government attempts to avoid the forum framework altogether by framing this as a First Amendment right of access to government proceedings case. The government likens photography of proceedings at ports of entry to access to courtroom proceedings, jails, town halls, and executions. This analysis might be relevant if plaintiffs challenged the policies' restrictions on photography of CBP computer screens, secured or interior areas of the port of entry, or holding cells. But the right asserted by plaintiffs in this case is that of speech on matters exposed to public view—not the right of access to government-controlled information or to areas not freely open to the public.

*Entm't Grp., Inc.*, 529 U.S. 803, 816–17 (2000); *accord Reno v. ACLU*, 521 U.S. 844, 879 (1997) ("The breadth of this content-based restriction of speech imposes an especially heavy burden on the Government to explain why a less restrictive provision would not be as effective[.]"); *Berger*, 569 F.3d at 1035. "It is rare that a regulation restricting speech because of its content will ever be permissible." *Playboy Entm't Grp.*, 529 U.S. at 818; *see also Berger*, 569 F.3d at 1052–53. Without question, protecting our territorial integrity is a compelling interest that could justify reasonable restrictions on speech activities at ports of entry. *See United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."). But the devil lies in the details: "Even at the border, we have rejected an 'anything goes' approach." *United States v. Cotterman*, 709 F.3d 952, 957 (9th Cir. 2013) (en banc). It is the government's burden to prove that these specific restrictions are the least restrictive means available to further its compelling interest. They cannot do so through general assertions of national security, particularly where plaintiffs have alleged that CBP is restricting First Amendment activities in traditional public fora such as streets and sidewalks.

Moreover, determining whether a location is properly categorized as a public forum involves largely factual questions. We have adopted "a fact-intensive, three-factor test to determine whether a location is a public forum in the first instance." *Jacobson*, 882 F.3d at 883. We consider "1) the actual use and purposes of the property, particularly [its] status as a public thoroughfare and availability of free public access to the area; 2) the area's physical characteristics, including its location and the existence of

clear boundaries delimiting the area; and 3) traditional or historic use of both the property in question and other similar properties." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1100–01 (9th Cir. 2003) (citations omitted).

How these factors apply here cannot be answered without development of the record and separate consideration of the Calexico West and San Ysidro ports of entry. At Calexico West, Askins took photographs from the shoulder of two streets and will continue to photograph the exterior areas of the port of entry from those streets, the nearby park, and other public, outdoor locations. It appears from the one photograph that we have in the record that the streets on which Askins stood are indistinguishable from other Calexico city streets, and the amended complaint indicates that there are no signs or other indicators marking the port of entry boundaries. Furthermore, the Genaro Teco Monroy Park abuts those streets, and the government concedes the park is not part of the port of entry—which means that Askins presumably could have taken the same photographs of Calexico West had he only taken a couple of steps back from the street into the park.

"Public streets and sidewalks" are "the archetype of a traditional public forum." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (quoting *Snyder v. Phelps*, 562 U.S. 443, 456 (2011)); *accord United States v. Grace*, 461 U.S. 171, 177 (1983) (noting that "'public places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums'"); *ACLU of Nev.*, 333 F.3d at 1101 ("[W]hen a property is used for open public access or as a public thoroughfare, we need not expressly consider the

compatibility of expressive activity because these uses are inherently compatible with such activity."). Even if we were to assume these areas are part of the port of entry, we would need to know much more about the port of entry's boundaries and the public's access to and use of Calexico West's streets and sidewalks before we could decide the relative importance of banning photography from those streets and sidewalks. *See Grace*, 461 U.S. at 179–80 (emphasizing that there was "no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave" in holding that sidewalks bordering the Supreme Court building are a public forum); *Jacobson*, 882 F.3d at 883.

San Ysidro presents a different set of circumstances. Ramirez took photographs of the San Ysidro port of entry from a pedestrian bridge and wishes to take photographs from the new pedestrian bridge, a transit plaza, and the adjacent sidewalk. Unlike the streets adjacent to the Calexico West port of entry, we are told there are signs prohibiting photography on the pedestrian bridge overlooking the San Ysidro port of entry. The government compares ports of entry to military bases, airport terminals, and interstate rest areas, portions of which have been held to be nonpublic fora. *See Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992) (airport terminals); *Greer v. Spock*, 424 U.S. 828, 838 (1976) (military bases); *Jacobsen v. Bonine*, 123 F.3d 1272, 1274 (9th Cir. 1997) (rest areas). But the boundaries of the San Ysidro port of entry are neither established by the record nor a matter of which we can take judicial notice. And even accepting that the San Ysidro port of entry facilities are a nonpublic forum, the public's access to and use of the transit plaza, sidewalks, and other outdoor

areas is critical to determining whether they retain their public fora status. *See Jacobson*, 882 F.3d at 884 ("The limited information in the record regarding the layout and use of the checkpoint area leaves many questions unanswered about the specific uses of areas outside the primary and secondary inspection zones."); *see also Flower v. United States*, 407 U.S. 197, 198–99 (1972) (per curiam) (holding that First Amendment protections applied equally on city streets and an open, unguarded street regularly used by civilians that passed through a military base).

We do not mean to suggest that all or even any areas within a port of entry are necessarily public fora, or that allowing the public to transit through a port of entry for the purpose of crossing the border creates a public forum. We decide today only that plaintiffs have adequately pleaded their claims and that further   factual development is required before the district court can determine what restrictions, if any, the government may impose in these public, outdoors areas.[3]

---

[3] We also anticipate that the parties will help illuminate why CBP's Directive and Ground Rules are even relevant to this case. Both written policies apply to "accredited" news organizations and representatives seeking advance approval for visits to CBP facilities. The Directive states that "[p]hotographing of suspects/detainees by news organizations in public places or in transit is neither encouraged nor discouraged" and provides that CBP personnel will "not interfere with photographing suspects in public places."

Similarly, the Ground Rules provides that "[r]eporters" who do not obtain advance permission may be denied entry and that members of the media who are admitted to port property must be accompanied. The Ground Rules prohibit photography in "non-public-spaces such as the pat down room and holding cells."

## III.  CONCLUSION

For the foregoing reasons, we **VACATE** the district court's dismissal of plaintiffs' First Amended Complaint and **REMAND** for further proceedings.  Costs shall be taxed against Defendants-Appellees.

---

We are puzzled as to how these guidelines apply to members of the public, whether media or not, who take photographs outside of port of entry facilities from streets and sidewalks accessible to the general public, whether those streets and sidewalks are on or off the port of entry.  On their face, the policies would not appear to apply to plaintiffs at all, much less sanction the detention of plaintiffs and the destruction of their photographs under the circumstances alleged.