NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DANIEL SERRANO, a single person,

Plaintiff-Appellee,

v.

RUSSELL LEE SANDERS; TOM SHIREY;
MICHAEL FAULK,

Defendants-Appellants

No.   23-35437

D.C. No. 2:21-cv-00191-SAB

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of Washington
Stanley A. Bastian, Chief District Judge, Presiding

Argued and Submitted March 25, 2024
Seattle, Washington

Before:  WARDLAW, W. FLETCHER, and MILLER, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge MILLER.

Washington State Patrol Troopers Russell Lee Sanders, Tom Shirey, and

Sergeant Michael Faulk (collectively, the "officers"), appeal the district court's

order denying the officers' motion for summary judgment in an action brought by

Daniel Serrano ("Serrano") claiming assault, excessive force, unlawful arrest, false

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

imprisonment, invidious discrimination, negligent supervision, and a violation of

Serrano's First Amendment rights based on events occurring on May 15, 2019, in

Spokane, Washington. The officers appeal only the district court's denial of

qualified immunity as to Serrano's excessive force, unlawful arrest, and First

Amendment claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm

in part and reverse in part.[1]

1. The district court erred in denying Trooper Shirey and Sergeant Faulk

qualified immunity as to Serrano's excessive force, unlawful arrest, and First

Amendment claims.[2] Serrano has not articulated any theory on which either

---

[1] Although the district court did not expressly address qualified immunity in its brief order, it necessarily denied qualified immunity by denying the officers' motion for summary judgment which plainly invoked qualified immunity. *See Giebel v. Sylvester*, 244 F.3d 1182, 1186 n.6 (9th Cir. 2001); *Peck v. Montoya*, 51 F.4th 877, 885 (9th Cir. 2022). We have interlocutory appellate jurisdiction to reach qualified immunity in an appeal from an order concluding that the material facts are genuinely in dispute by assuming that the non-moving party's version of the material facts is correct and drawing all reasonable inferences in that party's favor. *See Peck*, 51 F.4th at 887. We do not have jurisdiction to entertain any challenge to the district court's conclusion that the evidence is sufficient to support Serrano's view of the facts or that the disputes of fact identified by the district court are genuinely disputed. *See id.*

[2] We use the term "unlawful arrest" to include Serrano's unreasonable seizure claim under the Fourth Amendment and his false arrest and false imprisonment claims under Washington state law. *See Youker v. Douglas County*, 162 Wash. App. 448, 465 (2011). The existence of probable cause is a complete defense to each of these claims, *see Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Hanson v. City of Snohomish*, 852 P.2d 295, 301 (Wash. 1993) (en banc), and it is the sole basis on which Trooper Sanders seeks to justify Serrano's warrantless arrest. Because the claims rise and fall together, we analyze them as one under the general label "unlawful arrest."

2

officer might be liable under these claims. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("[A] court must decide whether the facts that a plaintiff has . . . shown (see Rules 50, 56) make out a violation of a constitutional right."); *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc) ("Generally, an appellee waives any argument it fails to raise in its answering brief.").

2. The district court erred in denying Trooper Sanders qualified immunity on Serrano's excessive force claim. The facts viewed in the light most favorable to Serrano suggest that Trooper Sanders threatened to use deadly force against Serrano when Trooper Sanders gripped his holstered firearm while moving toward Serrano, who was unarmed, non-threatening, and had his hands in the air. *See Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022). Without deciding whether a reasonable factfinder could conclude that Trooper Sanders' conduct violated the Fourth Amendment, we hold that Trooper Sanders is entitled to qualified immunity because Serrano has not shown that every reasonable officer in the circumstances would have understood that Trooper Sanders' conduct violated clearly established law. *See Pearson*, 555 U.S. at 232. Trooper Sanders did not point his gun at Serrano; he did not remove the firearm from its holster; nor did he verbally threaten to shoot Serrano. *See Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam) (observing that "[n]either we nor the Supreme Court have held that merely unholstering a firearm, without more, constitutes excessive force,"

3

and distinguishing cases in which "a gun was pointed at the suspect").

3. The district court correctly denied Trooper Sanders qualified immunity on Serrano's unlawful arrest and First Amendment claims.

A. Viewing the facts in the light most favorable to Serrano, a reasonable juror could conclude that Trooper Sanders lacked probable cause to arrest Serrano for obstruction.[3] "Probable cause exists when, under the totality of the circumstances known to the arresting officers . . . a prudent person would believe the suspect had committed a crime." *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001). The only crime for which Trooper Sanders asserts probable cause is "obstructing a law enforcement officer," which occurs whenever a "person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." Wash. Rev. Code § 9A.76.020.

---

[3] Trooper Sanders contends that the material facts are undisputed, because "most" of the relevant portion of the incident is captured on the dash camera footage. To the extent Trooper Sanders challenges the genuineness of the disputes of fact—that is, the sufficiency of the evidence Serrano has offered to support his view of the facts—we lack jurisdiction. *See Peck*, 51 F.4th at 885–87. To the extent Trooper Sanders challenges the district court's identification of the material facts, we disagree with Trooper Sanders' characterization of the record. Unlike in *Scott v. Harris*, 550 U.S. 372, 378 (2007), the footage in this case does not provide a complete picture of "what actually happened." The officers appear on camera for only a few seconds prior to Serrano's arrest, and Serrano himself never appears in the dash camera footage until after he is arrested. The other third-party on the scene, Robert Duncan, never once appears in the footage. The dash camera footage audio is often faint, and much of the key dialogue before and after the arrest is inaudible.

4

Serrano interacted with law enforcement for just 95 seconds before the officers arrested him for obstruction. When Serrano arrived on the scene, Trooper Sanders had already arrested and handcuffed Serrano's brother who was sitting inside the patrol car. Viewing the evidence in the light most favorable to Serrano, the Trooper's relevant duties were already completed subject to the tow truck's arrival. Had Serrano not interacted with law enforcement, Trooper Sanders would have spent the same 95 seconds waiting for the tow truck to arrive. On this record, a reasonable factfinder could conclude that any "delay" in Trooper Sanders' duties prior to arresting Serrano—including any delay in radio calls that Trooper Sanders would have made with respect to Serrano's brother's arrest—was either *de minimis* or no delay at all.[4]

B. Under the facts as we must assume them to be, Trooper Sanders' arrest of Serrano violated Serrano's clearly established First and Fourth Amendment rights. Trooper Sanders acknowledged in his motion for summary judgment that

---

[4] The cases Trooper Sanders cites are distinguishable. In *State v. Holeman*, 693 P.2d 89, 90 (Wash. 1985) (en banc), officers validly arrested a man for obstruction after the man attempted to *prevent* another person from being arrested. Similarly in *State v. Lalonde*, 35 Wash. App. 54, 55–56 (1983), officers validly arrested a man for obstruction after the man participated in a group of people which had surrounded an officer and grabbed at him, and the man had returned to the scene after being escorted a safe distance away. *Cf. City of Seattle v. Abercrombie*, 85 Wash. App. 393, 395–97 (1997) (involving a man who was verbally abusive and threatening to law enforcement, and who returned to the scene after being escorted 50 feet away).

there is a clearly established First Amendment right "to record law enforcement officers engaged in the exercise of their official duties in public places." Trooper Sanders does not dispute that this right necessarily includes the right to peaceably *observe* officers carrying out their official duties in public. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 & n.2 (9th Cir. 2018); *accord Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020) (describing the "clearly established right to watch police-citizen interactions at a distance and without interfering"). Rather, Trooper Sanders insists that Serrano has not identified a clearly established right to observe officers in an obstructive manner. The district court found, however, that there was sufficient evidence in the record for a jury to conclude that Serrano did not obstruct Trooper Sanders. To the extent Trooper Sanders challenges the sufficiency of the evidence that the district court found, we lack jurisdiction to consider his claim. *See Peck*, 51 F.4th at 885–87.

Serrano challenges Trooper Sanders' commands that Serrano depart the scene and Trooper Sanders' arrest of Serrano as separate violations of Serrano's First Amendment rights. In *Askins*, we announced that an officer's content-based restriction on an individual's right to peaceably observe law enforcement officers carrying out their public duties in a public forum—whether such restriction appears in the form of an order to cease observing or an arrest—may be upheld only if it is "the least restrictive means necessary to serve a compelling government interest."

6

899 F.3d at 1044–45.

Viewing the facts in the light most favorable to Serrano, a reasonable factfinder could conclude that Serrano, like the plaintiffs in *Askins*, maintained a safe distance from the officers, acted peaceably, insisted that he had a "right" to remain on the scene and observe, and was detained only after refusing commands to cease observing and vacate the area. Trooper Sanders has not disputed that Serrano was standing in a public forum, and a reasonable factfinder could conclude that he was. A reasonable factfinder could also conclude that Trooper Sanders' commands and, ultimately, his arrest of Serrano were retaliatory, content-based restrictions on Serrano's First Amendment rights, *see Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019), placing Trooper Sanders' conduct squarely within the realm of *Askins* and beyond the bounds of *City of Seattle v. Abercrombie*, 85 Wash. App. 393 (1997).

Even assuming there is a compelling governmental interest in securing a crime scene, *see Abercrombie*, 85 Wash. App. at 399, nothing in the record as it exists and as we must view it would have suggested to a reasonable officer that commanding Serrano to leave the scene entirely—or arresting him—was the "*least restrictive means necessary*" to achieve that interest, *Askins*, 899 F.3d at 1044–45 (emphasis added).

7

**AFFIRMED IN PART AND REVERSED IN PART.**[5]

---

[5] Each party shall bear its own costs on appeal.

FILED

MAY 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MILLER, Circuit Judge, concurring in part and dissenting in part:

I agree that Trooper Shirey and Sergeant Faulk are entitled to summary judgment based on qualified immunity on all claims and that Trooper Sanders is entitled to summary judgment based on qualified immunity as to the excessive-force claim but not as to the First Amendment claim arising out of his allegedly retaliatory arrest of Serrano. My only point of disagreement with today's decision is that, unlike the court, I would hold that Trooper Sanders is entitled to summary judgment based on qualified immunity as to the First Amendment claim arising out of his order to Serrano to leave the scene.

In *City of Seattle v. Abercrombie*, the Washington Court of Appeals rejected a facial challenge to an ordinance authorizing officers to require bystanders to leave a crime scene while an investigation is in progress. 945 P.2d 1132 (Wash. App. 1997). The court explained that "[t]he ability of police officers to restrict public access to a crime scene serves a significant government interest both in facilitating a thorough investigation and assuring the safety of everyone at the scene." *Id.* at 1135. To be sure, we have also held that the First Amendment protects "the right to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. Department of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018). In so holding, we stated that content-based

restrictions on speech "in a traditional public forum" such a public street or sidewalk "are subject to strict scrutiny and may only be upheld if they are 'the least restrictive means available to further a compelling government interest.'" *Id.* (quoting *Berger v. City of Seattle*, 569 F.3d 1029, 1050 (9th Cir. 2009) (en banc)).

But the "focus" of a qualified-immunity analysis is "whether the officer had fair notice that her conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). We have been admonished "not to define clearly established law at a high level of generality" and instead to focus on "whether the violative nature of *particular conduct* is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (emphasis added). In answering that question, *Askins* is not helpful. Unlike this case, *Askins* involved the interests of activists in recording government action related to controversial public policy issues. 899 F.3d at 1038–40. Also unlike this case, it did not involve an active crime scene. Because no case clearly established that an order like the one Trooper Sanders gave was not the least restrictive means of serving the interests identified in *Abercrombie*, I would hold that he is entitled to qualified immunity on Serrano's claim arising out of that order.